TOBACCO GROWERS CO-OPERATIVE ASSOCIATION v. J. L. BLAND.

(Filed 5 March, 1924.)

**1. Contracts—Breach—Specific Performance—Co-operative Marketing—Statutes.**

A penalty in a small sum erroneously attempted to be imposed on a member by the tobacco marketing association, under its contract for the failure to market the tobacco of his nonmember tenant, is not of sufficient proportionate importance to justify an entire severance of the contract relation by the member thereof.

**2. Same—Injunction—Equity.**

The right given by chapter 87, section 17c, Laws of 1921, to a tobacco marketing association formed under the provisions of said chapter 87, to injunctive relief against a member breaching his contract, upon filing the bond and verified complaint showing such breach, or threatened breach, relates only to the initial process and does not, and is not, intended to withdraw from the courts their constitutional right to pass upon the question of continuing the injunction to the final hearing upon the issues, under approved principles of law and equity.

**3. Same.**

A tobacco marketing association, formed under the provisions of the statute, upon the hearing as to continuing its temporary restraining order, must bring itself within the equitable principles applicable, and the temporary restraining order obtained under the provisions of the statute will not be continued if the breach of the contract complained of was caused by the plaintiff's own default, or if the continuance of the temporary restraining order will work greater injury than its dissolution by the court.

**4. Same—Pleadings.**

> Upon the application of a tobacco marketing association formed under the statute for an injunction against its member from breaching his contract by failure to market his tobacco through the association, the defendant made it properly to appear upon the hearing as to continuing the preliminary restraining order that he had complied with his contract as far as he was able, but that the failure of the plaintiff to pay him for the large portion of his crop marketed through it under the terms of the contract forced him to market otherwise a small portion of his crop to raise money for supplies necessary for the support of himself and family: *Held*, the general denial by the plaintiff of owing the defendant anything under the contract, without detailed statement as to the account between them from information available to it, was insufficient, and an order of the Superior Court judge dissolving the restraining order upon defendant's giving a proper bond for plaintiff's protection was proper under the evidence in this case.

CIVIL ACTION heard on return to preliminary restraining order at New Bern, N. C., at Fall Term, 1923, before *Horton, J.*

On the hearing there were facts in evidence on part of plaintiff tending to show that it was an association duly organized under chapter 87, Laws of 1921, having members who signed a standard form of contract obligating them to sell and deliver to plaintiff all the tobacco grown by them or held and acquired as landlord for the years 1922, 23, 24, 25, 26, and not otherwise, etc. That defendant as member signed said contract, and in breach thereof sold his tobacco crop for 1923 to the amount of 12,000 pounds to other persons, and avowed his purpose not to make further deliveries of his tobacco to plaintiffs, who pray an injunction to the hearing.

Defendant, admitting his membership in the association, offers evidence including his own specific averments under oath, to the effect that pursuant to his contract and obligation he delivered to plaintiff his entire tobacco crop for the year 1922, which, according to market prices generally available, was worth as much as $1,500. That for the year 1923 his crop amounted to 6,000 pounds, and of this he delivered to plaintiff two-thirds of same. That plaintiff is due to defendant on his crop for 1922, according to market prices available, as much as $700, and has wrongfully failed and refused under different pretenses to pay said sum to defendant or to properly account to him for the balance due on his tobacco crop of that year. That, being unable to obtain the balance due him or to maintain himself and family without it, defendant has sold the remainder of his 1923 crop for the purpose of obtaining necessary supplies for his support.

Defendant avers further that plaintiff in breach of the agreement, in the partial settlement which it has made on the crop of 1922, wrongfully withheld $36.80 as a penalty under the contract on tobacco from

plaintiff which tobacco belonged to one of defendant's tenants who was not a member of the association.

The plaintiff offered affidavits denying that it had wrongfully failed to account for the crop of 1922, but had acted in accord with the contract stipulations concerning the management and sale of said crop, and averred further that it had withheld the $36.80 as penalty for failure to deliver the tenant's crop, but since the decision of *Tobacco Assn. v. Bissett, ante,* 180, in denial of plaintiff's right to retain said money, plaintiff has offered to return or pay same to defendant, and is still ready to do so.

Upon these opposing averments the court gave judgment dissolving the injunction for the reason, among others, that plaintiff had wrongfully and in breach of its agreement withheld the $36.80, and further required defendant to enter into bond in the sum of $600 to save plaintiff harmless, etc., which said bond was duly given. Plaintiff excepted and appealed.

*Burgess & Joyner and Moore & Dunn for plaintiff.*
*Aaron Sapiro, E. L. Hayes, and T. E. Bowen of counsel for plaintiff.*
*D. L. Ward for defendant.*

HOKE, J. It is contended for defendant that further performance of the contract cannot be insisted on because plaintiff, in settlements to date for the crop of 1922, has wrongfully withheld $36.80 as penalty for nondelivery of certain tobacco of one of defendant's tenants, the latter not being a member of the association. In *Coöperative Assn. v. Bissett, ante,* 180, it was held that the withholding of this amount is not warranted by the law or the provisions of the contract, but on authority this breach is not of sufficient proportionate importance to justify an entire severance of the contract relation. *Brewington v. Loughran,* 183 N. C., 558; *Morrison v. Walker,* 179 N. C., 587; *Westerman v. Fiber Co.,* 162 N. C., 294.

In the latter case, the governing principle applicable is stated as follows: "It is not every breach of contract that will operate as a discharge and justify an entire refusal to perform further. Speaking generally to this question in Anson on Contracts, 349, the author says: 'But though every breach of the contractual obligation confers a right of action upon the injured party, it is not every breach that relieves him from doing what he has undertaken to do. The contract may be broken wholly or in part, and if in part, the breach may not be sufficiently important to operate as a discharge.' In a contract of this magnitude, a default in respect to building eight or ten ordinary shacks to house the hands engaged in the business should not effect a complete discharge."

Again, it is contended that the contract is broken and defendant discharged from further obligation thereunder by reason of the wrongful failure of plaintiff to settle properly for the crop of 1922, defendant's evidence tending to show that he delivered his entire crop for that year to the value of $1,500, and has been paid thereon only $800, and that plaintiff has wrongfully failed and refused to account further. Such a breach if properly established might well amount to a destruction of the contract, relieving defendant from further performance, but in our estimate and on the evidence as now presented the pertinent facts are not sufficient to support the position.

From a proper perusal of the standard form of contract, as signed by defendant, it appears that plaintiff is not allowed as of right the entire life of the contract in which to market the member's crop and account to him for its proceeds, but is to sell to the best advantage according to the dictates of good judgment and business prudence. The general policy to be pursued here and as contemplated by the statute is wisely foreshadowed by the *Chief Justice* in his valuable opinion in *Coöperative Assn. v. Jones,* 185 N. C., 265, as follows: "The contract does not contemplate that the association will hold over the crops raised in one or more successive years, such being destructive of the purpose of the association as contemplated by the statute. The plaintiff will continue to exist only if it provides for a normal, orderly marketing of the tobacco crops and by putting on the market of the world annually the production of that year." While this is the correct principle and the general rule of conduct to be pursued and affords a proper setting for a correct construction of the agreements, there is no precise time fixed in the contract for making the sale, and this is left largely to the sound discretion of the directors or the appropriate governing body of the association; a discretion, however, that is not to be exercised arbitrarily but fairly and reasonably, having due and proper regard to the purposes of the organization and the conditions and circumstances prevailing at the time, and if it should be established that the management, unmindful of its duties, should attempt to exercise the powers entrusted to them in bad faith or for ulterior purposes, or there should be such unreasonable delay in marketing the crop or accounting for same that bad faith could be inferred, such conduct going, as it does, to the essentials of the agreement, could well be held to destroy the contract and relieve the members from further performance.

While we are of opinion, as stated, that the facts as now presented would not uphold a finding of bad faith on the part of the association and its management, it does not at all follow that on this record the court should continue an injunction to the hearing in aid of plaintiff's suit.

We are not unmindful here of the provision in the statute under which plaintiff is organized, to the effect "That in the event of a breach or threatened breach of the contract, plaintiff should have a right to relief by specific performance, and to an injunction when reasonably required in the assertion and protection of its rights under the contract. And further, that in filing a bond and verified complaint, showing a breach or threatened breach, a preliminary restraining order should issue. Laws of 1921, ch. 87, sec. 17c. But the purpose and meaning of this section is principally to put beyond question the fact that plaintiff in these suits should have the remedy specified to be available under the general principles applicable, and that the closing clause, which provides for a preliminary injunction on the mere filing of a verified complaint, refers only to the initial process and does not and is not intended to withdraw from the courts the right to decide these causes under approved principles of law. Any other interpretation would be to threaten the validity of the act, or this portion of it, as an unwarranted interference by the Legislature with powers that are strictly judicial, a construction that courts do not readily adopt. Black's Handbook on American Constitutional Law, citing Cooley on Constitutional Limitations, 96; *Clapp v. Ely,* 27 N. J. L., 622, and Black's Constitutional Law (3 ed.), 66.

Considering the record, then, in view of the general principles which should prevail in such cases, it is recognized that one who invokes in this way the equitable powers of the court for the protection of his rights must not, by his own breach of duty, have caused the injuries or threat of them, of which he complains, a position to some extent embodied in the more familiar maxim "that he who comes into equity must do so with clean hands."

Again, as probably more pertinent to the instant case, it is an accepted ruling that an injunction will not usually be granted or continued where "it will do more mischief and work greater injury than the wrong which it is asked to redress." *Mfg. Co. v. McElwee,* 94 N. C., 425; *American Smelting Co. v. Godfrey,* 158 Fed., 225, reported also in 14 Ann. Cas., 8; 14 R. C. L., 353-357; Title Injunctions, secs. 56-60; 1 Joyce on Injunctions, secs. 117-118.

In *American Smelting Co. v. Godfrey, supra,* the annotator in 14 Annotated Cases, at p. 19, states the principle as follows: "It may be stated as a general rule that in determining whether to grant an injunction it is the duty of the Court to consider the inconvenience and damage that will result to the defendant as well as the benefit that will accrue to the complainant by granting the writ." And further, in illustration: "Upon balancing the conveniences, if it appears that an injunction would be productive of greater injury than would result from its denial, it should not be granted."

And in the citation to R. C. L., sec. 60, *supra,* it is said, among other things: "But the Court is not bound to make a decree that will do more mischief and work greater injury than the wrong it is asked to redress. The comparative convenience or inconvenience of the parties from granting or withholding the injunction sought should be considered, and none should be granted if it would operate oppressively or inequitably or contrary to the real justice of the case."

From a perusal of the evidence it appears that defendant, acting in accord with his contract, delivered to plaintiff his entire tobacco crop for 1922; that he delivered two-thirds of his crop for 1923, and owing to failure on part of plaintiff to properly account for and pay over the balance due from the sales of 1922, amounting to about $800, he was compelled to sell the remaining one-third of the 1923 crop to raise money for the necessary supplies of himself and family.

True, plaintiff has made denial as to the amount due on the crop of 1922, or that there is anything due, but considering the fact that plaintiff kept or should have kept proper entries showing what had been done with the crop of 1922, and that plaintiff or its officers and agents had access to its book, its statements as to the disposition of the crop of 1922 and its denial of the amount due are entirely too general for a court to look with favor or to act on them. We think, therefore, that a proper application of the principles above stated is in full support of his Honor's judgment dissolving the restraining order in this case, on defendant's giving proper bond, and leaving the parties to have the litigated questions between them determined at the hearing.

The disposition made of the present appeal in no way conflicts with the decisions made in *Tobacco Assn. v. Battle, ante,* 260; *Tobacco Assn. v. Patterson, ante,* 252; and *Tobacco Assn. v. Spikes, post,* 367. In those cases defendants had denied their membership and were in an attitude of resistance towards the contract and any and all of its obligations, and in such case, in our opinion, the writ was required to conserve and protect the rights of plaintiff pending litigation, while here the defendant, as far as he could reasonably do so, has acted in perfect loyalty to the contract and was doing his best to perform, and the damage threatened by its issuance far surpasses any injury to be expected from a denial of the writ.

The judgment as entered below is in accord with correct equitable principles and same is

Affirmed.