TEMPLETON vs. GRAVES.

*November 24 — December 11, 1883.*

SLANDER: DAMAGES. *(1, 2) Punitory damages, when allowed. (3) Evidence of express malice. (4) Damages held not excessive.*

1. The rule allowing punitory damages in actions of tort is too well settled in this state to be overturned otherwise than by legislative enactment.

59    95
99    675

59    95
e106   77
106   806

59         95
111      2319

Templeton vs. Graves.

2. Punitory damages should be awarded in an action of slander only
   when in speaking the slanderous words the defendant was actuated
   by special ill-will, bad intent, or malevolence towards the plaintiff.
3. Such special ill-will or *express malice* may be inferred from all the
   circumstances of the case, but is not to be inferred from the facts
   alone that the words are false and injurious to the plaintiff,
   although *malice* is implied from those facts. The evidence in this
   case (stated in the opinion) is *held* to support a finding that the
   defendant was actuated by express malice.
4. The court may interfere when the damages awarded are either so
   large or so small as to force a conviction that the jury have acted
   under the influence of perverted judgment. But under all the
   circumstances of this case, this court declines to set aside a ver-
   dict for $2,000 against a defendant who had slanderously charged
   the plaintiff with being a thief and with having broken open a
   granary and stolen wheat therefrom.

APPEAL from the Circuit Court for *Waukesha* County.
Action for slander. The slanderous words alleged in the
complaint to have been spoken by the defendant to the
plaintiff were: "You are a damn thief; you broke open a
granary last fall and stole my wheat." In his answer, after
a general denial, the defendant alleges by way of mitigation
that if he spoke the words charged he did so without malice,
and in the heat of passion caused by the fact that the plaint-
iff, just before he uttered them, had called him a bastard.
On the trial the defendant amended his answer by adding
thereto an averment that the words charged to have been
spoken by him were true. The cause was tried and resulted
in a verdict for the plaintiff, and an assessment of his dam-
ages at $2,000. The testimony is sufficiently stated in the
opinion. A motion for a new trial was overruled, and judg-
ment for the plaintiff was entered pursuant to the verdict.
The defendant appeals from the judgment.

For the appellant there was a brief signed by *P. H. Car-
ney* and *W. H. Thomas*, as attorneys, and *J. V. V. Platto*,
of counsel, and the cause was argued orally by *Mr. Platto*.
They argued, *inter alia*, that the plaintiff was entitled only

to compensatory damages, which, as no special damages were alleged or proven, were merely nominal. Where slanderous words which are *per se* actionable are spoken in the heat of passion induced by some improper conduct immediately preceding on the part of the plaintiff, such circumstances should be considered in mitigation of the damages, even down to nominal damages. Sedgw. on Dam., 51, 52; Abbott's Trial Ev., 673; *Miles v. Harrington*, 8 Kan., 425; *Flint v. Clark*, 13 Conn., 361; *McClintock v. Crick*, 4 Iowa, 453, 456, 457; *Larned v. Buffinton*, 3 Mass., 546, 553; *Brown v. Brooks*, 3 Ind., 518, 520; *Hotchkiss v. Lothrop*, 1 Johns., 286; *Beardsley v. Maynard*, 4 Wend., 336; *Dolevin v. Wilder*, 34 How. Pr., 488, 497; *Child v. Homer*, 13 Pick., 503, 507; *Jauch v. Jauch*, 50 Ind., 135; *Prentiss v. Shaw*, 8 Am. Law Reg. (N. S.), 712; *Voltz v. Blackmar*, 64 N. Y., 440, 444, 445; *Ranger v. Goodrich*, 17 Wis., 78, 81; *Morley v. Dunbar*, 24 id., 183, 187; *Wilson v. Young*, 31 id., 574; *Jones v. King*, 33 id., 422; *Corcoran v. Harran*, 55 id., 120; *Rogers v. Henry*, 32 id., 328. The fact that the defendant believed the words to be true when he uttered them, and had good reason for so believing, as in this case, may go to mitigate the damages down to nominal damages. *Larned v. Buffinton*, 3 Mass., 546; *Simpson v. Black*, 27 Wis., 206, 208; *Noonan v. Orton*, 32 id., 106, 113; *Leavitt v. Cutler*, 37 id., 46, 52; *Kennedy v. Holborn*, 16 id., 457; *State ex rel. Lanning v. Lonsdale*, 48 id., 348; *Talmadge v. Baker*, 22 id., 625; *Fenelon v. Butts*, 53 id., 344; Abbott's Trial Ev., 672; *Potter v. Thompson*, 22 Barb., 87, 90; *Swartzel v. Dey*, 3 Kan., 244. The damages awarded in this case were grossly excessive. See *Rogers v. Henry, supra; Potter v. Thompson, supra; Child v. Homer*, 13 Pick., 503; *Broach v. King*, 23 Ga., 500; *Woodruff v. Richardson*, 20 Conn., 238; *Marshall v. Heller*, 55 Wis., 392.

*D. H. Sumner*, for the respondent, to the point that the damages were not excessive, cited: *Burchard v. Booth*, 4

Wis., 67; *Cramer v. Noonan*, id., 231; *Schmidt v. M. & St. P. R'y Co.*, 23 id., 186; *Goodno v. Oshkosh*, 28 id., 300; *Bass v. C. & N. W. R'y Co.*, 42 id., 654; *Bowe v. Rogers*, 50 id., 598.

LYON, J.   1. The learned and ingenious counsel for the defendant devoted a considerable portion of his argument to an attack on the rule which allows punitory damages to be awarded in any action of tort, and he maintained that this court should overrule all of the cases heretofore adjudicated by it in which such damages were allowed.   To this argument it is a sufficient answer to repeat what was said of the rule allowing punitory damages by the late chief justice in *Bass v. C. & N. W. R'y Co.*, 42 Wis., 654: "The rule was adopted as long ago as 1854, in *McWilliams v. Bragg*, 3 Wis., 424, and has been repeatedly affirmed since.   It is therefore too late to overturn it by judicial decision.   That could well be done now by legislative enactment only."   This was said in 1877, since which time the rule has been often reaffirmed,— notably so in *Eviston v. Cramer*, 57 Wis., 570.   Counsel says that in the latter case this court went far in the direction of abrogating the rule.   The statement is not warranted by anything there said or decided, and must have been made under an entire misapprehension of the case.

2. The only other ground assigned for a reversal of the judgment is that the damages assessed by the jury are excessive, and hence that the motion for a new trial should have been granted for that reason.   It is manifest that the jury assessed punitory damages, for the sum assessed is much greater than mere compensatory damages.   It is clear that a verdict for $2,000 damages, were the recovery confined to mere compensatory damages, could not be upheld upon the evidence in the case.   Punitory damages can only be properly awarded in an action for slander, when it is made to appear that in speaking the slanderous words the defendant

was prompted thereto by special ill-will, bad intent, or malevolence towards the plaintiff; that is to say, express malice of the defendant must be proved, or the recovery should be limited to compensation alone. Such malice may be inferred from all the circumstances of the case; indeed, it would ordinarily be very difficult to prove its existence by direct evidence. But it is not to be inferred from the facts alone that the words are false and injurious to the plaintiff, although malice is implied from those facts. *Eviston v. Cramer*, 57 Wis., 570. The precise question to be here determined is, therefore, Would the testimony introduced on the trial support a finding that the defendant was prompted by special ill-will or bad intent toward the plaintiff in speaking the words complained of? To answer this question intelligibly a brief statement of what the testimony tends to prove is required. It must be understood that we do not undertake to decide what facts are proved or disproved, but only to state the facts which the jury might have found from the evidence had questions of the existence thereof been specially submitted to them.

The testimony shows or tends to show that, at the time the slanderous words were spoken, the plaintiff was a merchant and postmaster in the town of Lisbon, Waukesha county, and the defendant was a wealthy land-owner in and resident of the same town. They had known each other twenty-five or thirty years, and were on friendly but not intimate terms. The defendant was inclined to be abusive and quarrelsome, and had many personal difficulties with others. In the fall of 1880, one Schroeder had 125 bushels of wheat in his granary in the same town of Lisbon. September 7th of that year he gave the defendant a bill of sale of fifty bushels thereof, designating it as "fifty bushels winter wheat." The wheat intended to be conveyed was in the center of the granary, and was white Russian wheat. The defendant received from Schroeder the key of the

granary, which he delivered to the wife of the latter to keep for him, but did not remove the wheat. September 29th of the same year Schroeder executed to the plaintiff a bill of sale of fifty bushels of the wheat in the same granary, which bill of sale the plaintiff filed in the town clerk's office on the same day. The defendant filed his bill of sale there on October 5th following, and then saw or had actual notice of the plaintiff's bill of sale. Later in the same year (the date not appearing) plaintiff opened the granary by permission of Schroeder and took therefrom fifty bushels of wheat — a part of it from the middle of the granary. While he was doing so, Mrs. S. came there and informed him that the middle belonged to defendant. That is the first notice the plaintiff had that the defendant claimed to own any of the wheat.

We may pause here to observe that on these facts — the defendant not having taken actual possession of his wheat nor filed his bill of sale with the town clerk, and the plaintiff having no notice of the sale — the latter's right under his purchase was paramount to that of defendant, and he had the right under his bill of sale to take any fifty bushels he chose of the 125 bushels in the granary. Besides, the wheat was taken by the plaintiff openly, and under a *bona fide* claim of right. Hence there is not the slightest ground in law or reason for characterizing the act of removing the wheat as a larceny or theft. But to proceed with the narrative. On June 18, 1881, in the afternoon, the defendant was engaged in a heated discussion in front of the plaintiff's store with the assessor of the town relative to the assessment by the latter of defendant's property, when the plaintiff said to the assessor from the stoop of his store, " Are you having a prayer meeting? " And the assessor replied, " I guess so." Thereupon defendant turned around towards plaintiff and said to him, " You God damned son of a bitch," and started towards plaintiff. Plaintiff said, " Then you are a bastard." Defendant continued to advance to-

Templeton vs. Graves.

wards plaintiff, and said, "God damn you, you couldn't break Cooling's will. God damn you, you broke open a granary and stole my wheat." He also charged plaintiff with having stolen wheat when in Boorman's mill. These epithets and charges of theft were repeated several times by the defendant in a loud and angry tone. There were twenty or thirty people present and within hearing when the charges were made, including the plaintiff's family. This appears to have been the first and only conversation between the parties concerning the wheat. This action is predicated upon the charge of theft then and there made by the defendant.

To establish the express malice of the defendant in making these charges, the plaintiff proved that on January 1, 1881, the defendant, in the presence and hearing of three other persons, said that the plaintiff broke open a granary and stole his wheat, and used other vulgar and dirty language; also that on May 2, 1881, he told another person that plaintiff broke a lock off a granary and stole his wheat; and when, in November of that year, after this action was commenced, such person expressed his regret that defendant had said anything to him about the matter, defendant replied, "That's all right; I am going to prove that he stole the wheat." Still further, it was proved that when defendant was on the way to Sussex (a village in Lisbon, in which plaintiff's store was situated), on the afternoon of the same 18th of June, and shortly before the altercation between the parties occurred, he said in the presence of two persons, that he was going up to give the plaintiff a piece of his mind; that he had been using Richard Cooling mean, and he would go up and give him a piece of his mind. On the foregoing proofs, notwithstanding the circumstances under which the slanderous words were spoken, the jury were justified in finding the express malice of the defendant. It is very strong evidence of such malice — of the ill-will and

malevolent intent of the defendant — that he made the same charges in cool blood at different times and to different persons, months before this action was commenced, and deliberately repeated them months afterwards, and that, confessedly, he went to the place of plaintiff's residence, at the time he made the charges for which this action was brought, for the purpose of upbraiding him for conduct of which the defendant disapproved. Under these circumstances the jury might well find that he was moved to utter the slanderous words by his preconceived hatred of and ill-will towards the plaintiff, rather than by any sudden provocation to which he was then subjected.

In *Rogers v. Henry*, 32 Wis., 327, which was also an action for slander, the judgment was reversed because the jury awarded excessive damages. The judgment went upon the ground that the evidence negatived any express malice on the part of the defendant, and hence that the jury were not authorized to award anything beyond compensatory damages. This case is much relied upon by counsel for defendant, yet it is manifest that it does not support the proposition that the damages in this case are excessive. The cases elsewhere cited to this proposition all go upon the same ground; that is, the absence of express malice. Doubtless the court may properly interfere if the damages awarded are either so large or so small as to force the conviction that the jury have acted under the influence of perverted judgment. In the present case the jury awarded very liberal damages. But when it is considered that the defendant persisted for many months in falsely charging that the plaintiff had committed an infamous crime; that he repeated the charge to many citizens; that he was evidently prompted by ill-will and bad intent towards the plaintiff; that the latter was engaged in a business in which public confidence in his honesty and integrity of character was absolutely essential to success; and that the defendant is a man of wealth, who could not be

punished adequately by the award of light damages, we can-not say that an award of $2,000 damages is so large that it must have been the result of a perverted judgment, or of any improper influence on the minds of the jurors.

After careful consideration of the whole case we are unable to find any sufficient ground for disturbing the judgment.

*By the Court.*— Judgment affirmed.

