KLOTHS, Respondent, vs. HESS, Appellant.

*December 15, 1905—January 9, 1906.*

*Slander: Pleading: Meaning of words spoken: Knowledge or understanding of hearers: Variance: Proof of words alleged: Damages.*

1. In a complaint for slander alleging that defendant had said concerning plaintiff, who had assisted at the birth of a child: "That child [the dead child of W. and M. K. meaning] has been murdered," the words "the dead child" do not assert that the child was born dead, but merely mean that it was dead when the alleged slanderous charge was made.

2. To defeat an action for slander on the ground that the hearers of the words spoken had knowledge rendering them nonslanderous, it must be shown that all the hearers had such knowledge.

3. Persons who heard the alleged slanderous words spoken cannot testify as to their understanding or opinion of the meaning of such words. The meaning actually conveyed by the words spoken is to be determined by the jury from the words themselves in the light of the *colloquium* and surrounding circumstances.

4. In an action for slander it is not necessary to prove that the precise words alleged in the complaint were spoken, but proof

of the speaking of substantially the same words as those alleged will suffice.

5. An award of $300 as compensatory damages for a charge of child murder against a woman of apparent respectability and good fame who had assisted at the birth of the child in question, is *held* not excessive.

6. Evidence that defendant, a physician, had charged plaintiff with murdering a child at whose birth she had assisted; that he had said he wanted to "put a stop to her going around doctoring;" that he had reiterated the charge in the presence of several people, and, upon demand, had refused to retract it—is *held* sufficient to sustain a conclusion of actual malice which would justify an award of punitory damages.

APPEAL from a judgment of the circuit court for Jefferson county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Action of slander for utterance by defendant of the words: "That child [the dead child of William and Mary Kittel meaning] has been murdered. The woman you had here [the plaintiff meaning] murdered it;" and, as a second cause of action, the words: "A murder has been committed over at Kittel's. That old lady [the plaintiff meaning] goes around with her grip. She ought to be stopped. The child [the dead child of William and Mary meaning] was murdered, and she [this plaintiff meaning] did it." There was evidence tending to prove that the plaintiff assisted at the birth of the child of Mary Kittel, which she now asserts was born dead; that the defendant, health officer of the town, being called upon in the afternoon of the same day to give a certificate or permit for burial of the child, after inspecting it, made substantially the statement set forth as the first cause of action at Kittel's house; and that the following day, at his store, in consultation with a justice of the peace and the chairman of the town, together with the father of the child and others, he spoke words approximating those set forth in the second cause of action.

The motion for nonsuit at the close of the plaintiff's evidence was overruled, and after completed trial a verdict ren-

dered in favor of the plaintiff for $800 compensatory and $200 punitory damages. Motion for new trial was overruled, on condition that the plaintiff remit $500 of the compensatory damages, which she did. Whereupon judgment was rendered for $500 damages and costs, from which the defendant brings this appeal.

*Harlow Pease,* for the appellant.

*R. B. Kirkland,* for the respondent.

DODGE, J. An objection to any evidence under the complaint was made, apparently on the contention that the words in the complaint "the dead child of William and Mary meaning," assert that the child was born dead. Such meaning is so obviously foreign to the whole sense that no discussion is necessary. The words, by reasonable interpretation, mean that the child was dead at the time the defendant made the charge.

It is contended that the motion for nonsuit should have been granted: First, because the hearers knew that the child was born dead; secondly, because the exact words alleged in the complaint are not proved; and, thirdly, because the hearers did not understand the defendant to charge intentional or wilful murder. No one of these reasons exists in the evidence. Both Kittel and his wife testify that they did not know at the time of the first slander that the child was born dead, but supposed that it lived for a short time. Hence, although there was some evidence from the plaintiff that she had told them that it was dead—albeit with some circumstances of doubt and effort to "infuse life,"—the testimony of these two witnesses was sufficient to carry to the jury the question of their knowledge. As to the second slander, no witness testifies to knowledge that the child was still-born; but at least two testify to a statement made on that occasion that it lived for a half an hour. Again, as to the speaking of the words, Mr. Kittel testified that at his house the defendant

said: "That child is murdered. That woman you had here is the one that murdered it." Mrs. Kittel testified to the words, on the same occasion: "That child has been murdered. I don't think you did it, but the woman you had here." Neither of these is more than the slightest modification in form of the very words stated in the complaint: "That child has been murdered. The woman you had here murdered it." Again, as to the second cause of action, Mr. Kittel testified to the words "That child was murdered. *Mrs. Kloths* you had there is the one that murdered it." Mr. Perry testified that on the same occasion *"Dr. Hess* said there had been a murder committed over there at Kittel's. He said it was a clear case of murder from what he saw. I asked him who was to blame for it, and he said this old lady in attendance," whom he afterwards named as the plaintiff. Again, "He said *'Mrs. Kloths* murdered the child.'" "He said 'She murdered the child.'" These words cannot be said to vary from those alleged in the complaint, namely, "A murder has been committed over at Kittel's; the child was murdered and she [*Mrs. Kloths*] did it." As to the meaning conveyed by these words, while it is true that certain witnesses testified either that they did not understand the defendant to mean or did not understand him to say that plaintiff wilfully killed the child, there are other hearers as to whom no such understanding is attempted to be shown, namely, Mrs. Kittel as to the first cause of action, and Mr. Kittel and W. S. Hess and an unnamed bystander as to the second cause of action. To defeat the action, *all* the hearers must be shown to have had the knowledge rendering the words spoken nonslanderous. *Hacker v. Heiney,* 111 Wis. 313, 319, 87 N. W. 294; *Hamlin v. Fantl,* 118 Wis. 594, 597, 95 N. W. 955. Apart from this, however, the authorities are overwhelming that such testimony as to the understanding of the hearers or as to their opinion of the meaning of the words spoken is not relevant or admissible; that the meaning actually conveyed by the

words spoken is a question to be resolved by the jury from the words themselves in the light of the *colloquium* and surrounding circumstances. *Eaton v. White,* 2 Pin. 42, 46; *Kidd v. Fleek,* 47 Wis. 443, 2 N. W. 1121; *Hacker v. Heiney, supra;* Townshend, Slander & L. (4th ed.) §§ 375a, 384. In any event, the construction or understanding testified to by witnesses cannot control the jury or the court as to the meaning actually conveyed. *Nelson v. Borchenius,* 52 Ill. 236, 238. But, indeed, we should find difficulty in discovering any ambiguity or doubt of construction in the words, "She murdered the child," proper to be submitted to a jury at all, when, as here, they are unqualified by any suggestion of accidental or even negligent killing. *Elmergreen v. Horn,* 115 Wis. 385, 91 N. W. 973.

Error is assigned upon refusal to charge that the jury must find that the precise words alleged in the complaint were spoken, otherwise verdict for defendant; and upon the charge, "It will be sufficient if you find that the words in some one or more of the statements of the slanderous words found in the complaint are substantially proven." Doubtless the general rule is that the complaint in slander must allege the speaking of specified words and not merely that, in effect, a libelous charge of some kind was made. *Schubert v. Richter,* 92 Wis. 199, 200, 66 N. W. 107. It is also true that at common law the proof must establish the speaking of those words, or enough of them to constitute slander, with great exactness. Perhaps some authorities require absolute identity, not even countenancing transposition of the third person for an address in the second person. Proof merely that the substance of the charge was made, but in different words, is not sufficient. Even this rule does not require, however, that every witness must quote the words of the complaint, but merely that the narrative related by the witness shall convince the jury that defendant used the words alleged against him in the complaint. The great weight of authori-

ties, however, while recognizing that the *gravamen* of slander is the speaking of certain words, and not the mere making of a defamatory charge, support the more liberal and reasonable rule that proof of substantially the same words as those alleged will suffice; that mere insignificant changes in the form of expression, or the substitution of an unambiguous pronoun for a substantive or for a proper name, and the like, will not prevent a verdict for plaintiff. Townshend, Slander & L. § 364 *et seq.;* 18 Am. & Eng. Ency. of Law (2d ed.) 1079; 13 Ency. Pl. & Pr. 63. It would be difficult to escape this more liberal view in this state under sec. 2669, Stats. 1898, declaring no variance material "unless it shall actually mislead the adverse party to his prejudice." It seems to have been adopted in application in *Dufresne v. Weise,* 46 Wis. 290, 1 N. W. 59, and *Schild v. Legler,* 82 Wis. 73, 51 N. W. 1099, although, of course, the general necessity of proving the *gravamen* of the charge has also been declared. *Zeig v. Ort,* 3 Pin. 30; *Geary v. Bennett,* 65 Wis. 554, 27 N. W. 335. We are convinced of the correctness of the charge given on this subject.

Certain other instructions requested by appellant either were so sufficiently covered by the charge given or were so inapplicable in the light of the evidence, as already outlined in considering the motion for nonsuit, that we cannot think discussion of them necessary. We do not find any error prejudicial to the appellant.

We cannot seriously entertain the contention that an award of $300 as compensatory damages for a charge of child murder against a woman of apparent respectability and good fame is excessive. Nor can we agree with appellant's counsel that there is no evidence upon which the jury might have based a conclusion of actual malice to support punitory damages. Defendant asserted that the plaintiff was in the habit of practicing midwifery, or, as one witness phrased it, "that she went around doctoring, and it was time to draw the line,"

and "he wanted him to put a stop to her going around doctoring," thus suggesting an ulterior motive of professional jealousy which the jury might have found to constitute actual malice. Again, there was the reiteration of the charge of murder in the presence of several people on the occasion of the second slander, and there is evidence, somewhat indefinite, but capable of the construction that upon demand for retraction by plaintiff defendant refused, saying, "I will not do anything of the kind if it costs me the last cent I have got, and you tell her so." *Klewin v. Bauman,* 53 Wis. 244, 10 N. W. 398; *Templeton v. Graves,* 59 Wis. 95, 17 N. W. 672; *Hacker v. Heiney, supra; Thibault v. Sessions,* 101 Mich. 279, 286, 59 N. W. 624; *Goodrich v. Stone,* 11 Met. 486.

*By the Court.*—Judgment affirmed.