MYROLD, Respondent, vs. NORTHERN WISCONSIN CO-OPERATIVE TOBACCO POOL, Appellant.

*November 11—December 8, 1931.*

For the appellant there was a brief by *Gilbert, Ela, Heilman & Raeder,* and oral argument by *G. Burgess Ela* and *Roman Heilman,* all of Madison.

For the respondent there was a brief by *La Follette, Rogers & Roberts* and *W. Wade Boardman,* all of Madison, and oral argument by *Mr. Boardman.*

ROSENBERRY, C. J.   The issues in this case were submitted to a jury on a special verdict.   The jury found (1st) that the grading of plaintiff's 1923 tobacco crop as fixed by defendant's grader was not substantially the true and correct grading and classification of such crop as to type and quality; (2d) that the defendant, in the exercise of good faith and under all the circumstances, was not justified in declining to regrade and reclassify the plaintiff's tobacco crop of 1923 upon his request therefor; and (3d) that the conduct of the defendant in its dealings with the plaintiff amounted to a substantial breach of the contract between the parties.

The contract was dated June 28, 1922, and covered the tobacco to be grown by the plaintiff down to June 1, 1927, and thereafter either party might terminate it as specified in the contract.   By the contract,—

"The grower agrees that he will sell to the association all the tobacco produced by or for him; that he will produce and prepare such tobacco for shipment in accordance with the lawful rules and regulations of the association and that he will deliver such tobacco at the time and place and in the manner directed by the association.

"The grower agrees that, in the event that he violates this contract, he will pay to the association the sum of five cents per pound for each pound of tobacco produced but not delivered by him according to the provisions herein; and that said sum may be deducted from any money due from the association to the grower."

The association agrees to buy all of the tobacco produced by or for the grower, the price to be paid to be fixed in the manner provided by the contract.

It is to be noted that the contract contains no provision relating to the grading of the tobacco. The practice was to have certain samples taken from the crop. These samples were then graded by the defendant's graders without knowing the name of the grower. On the basis of this grading, the tobacco was to be accepted and ultimately paid for. This practice was followed in 1922 and no controversy arose with respect to the 1922 contract, either as to quantity or grade. In the early part of 1924 the defendant's samplers took samples out of the crop raised in 1923, which samples were thereafter graded, and about the middle of March, 1924, the plaintiff received a statement showing that his "crop had been graded in Grade D, and that this grade had 68.6 % of leaves 18 inches and up; 7.2 % under 18 inches, 24.2 % of seconds or table rags, and that there was 3 bundles of nondescript; 24.5 % being 18 inches and up; 40.9 % being under 18 inches and 34.6 % of seconds." Upon receipt of this report plaintiff notified defendant that he objected to the grading and threatened to withdraw from the pool. After some discussion the defendant sent two other graders to plaintiff's premises who examined the tobacco and found that the grade made and reported to plaintiff was substantially correct.

In the spring of 1923 the defendant, desiring to raise money upon the tobacco then in its hands, found that the contract contained no provision for grading or mingling, and sought to amend the same by having the owner sign the

document known as Exhibit B, the material part of which is as follows:

"That said Northern Wisconsin Co-operative Tobacco Pool may pool or mingle all the tobacco of like grade delivered to it; that the Pool's grading and classification shall be conclusive; that the Pool has the right to borrow money on the security of any or all tobacco delivered to it and on the security of the proceeds thereof, hereby ratifying that certain indenture given or proposed to be given by said Pool to a Madison Trust Company, Trustee, dated on or after January 2, 1923."

This supplemental agreement the plaintiff refused to sign when it was presented to him in March, 1923, and it is the claim of the plaintiff that his refusal to sign this agreement resulted in discriminatory action against him and the failure of the defendant properly to grade his crop in order to compel him to sign the supplemental agreement.

It is the contention of the defendant (1st) that the court should have directed a verdict in its favor upon the defendant's counterclaim; (2d) that the covenants in the contract are severable and independent, and, assuming that there was a breach, such breach would not entitle the plaintiff to a rescission of the contract; (3d) that the contract in question is an instalment contract and is subject to the Uniform Sales Act, and under the undisputed facts the defendant was guilty of no breach so material as to justify the plaintiff in refusing further performance.

Plaintiff's tobacco was subsequently run over the table or sorted and graded, and while the original grading would have given 425 pounds of seconds, in the actual sorting and grading there were 96 pounds, a difference of 329 pounds, making the seconds approximately $5\frac{1}{2}$ % instead of 24.2 % of the whole. Upon this and other evidence the jury based its finding that the defendant was not in good faith justified in refusing to regrade and reclassify the plaintiff's crop and

that the failure to properly grade and refusal to regrade constitute a substantial breach of the contract.

The defendant urgently insists that the breach of the contract by the defendant, if any, was so inconsequential that as a matter of law it affords the plaintiff no excuse or justification for his refusal to further perform his contract, citing in addition to *Gerber v. Ogle Coal Co.* 195 Wis. 578, 218 N. W. 361, *Nebraska Wheat Growers' Asso. v. Smith,* 115 Neb. 177, 212 N. W. 39; *Mersey Steel & Iron Co. v. Naylor, Benzon & Co.* L. R. 9 App. Cas. (Eng.) 434; *Tobacco Growers' Co-op. Asso. v. Bland,* 187 N. C. 356, 121 S. E. 636, and other cases.

It appears from the testimony that upon the grading and classification given the plaintiff on his 1923 crop he would have realized thereon $223.20. Mr. Melaas, who was the owner of the other half of the crop raised by the plaintiff, realized $232.81. The plaintiff sold outside of the pool and realized $394.39. This fact may not be material in view of the position of the plaintiff, who made no complaint as to price but objected only as to grade. If there was no default except the difference in grade, amounting to $9.61, it would, under the authority of the cases referred to, be difficult to hold the breach so material as to justify the refusal of further performance. There was involved in the dispute the right of the plaintiff to continue his membership in the defendant co-operative. The principal contention between the parties upon the facts is this: plaintiff contends that the defendant refused to regrade and reclassify his crop unless and until he signed the supplemental contract, which he refused to sign in the spring of 1923, while the defendant claims plaintiff seized upon the circumstances as an excuse for selling outside the pool.

The finding of the jury that the refusal of the defendant to regrade and reclassify was not in good faith, finds in favor of the plaintiff's contention upon this question. If the grad-

ing given the plaintiff by the defendant was not a substantially correct grading and classification and it refused to regrade and reclassify unless and until the plaintiff signed the supplemental contract, this circumstance brings it within the doctrine of *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270. The defendant contends that it did send its agents to the plaintiff's farm to regrade and reclassify, but the fact remains undisputed that the plaintiff received no new grading nor new classification. Whether or not there is a material breach is, except in clear cases, a question for the jury. Upon the evidence the jury might have found either way upon the question submitted. The facts as found by the jury substantiate plaintiff's claim that the defendant refused further performance except on condition that the plaintiff sign the supplemental contract. So that there is more involved than the disputed item of $9.61. There was an attempt on the part of the defendant to coerce the plaintiff into a modification of the contract. This no doubt constitutes a material breach and fully justified the plaintiff in refusing to go on with the contract.

*By the Court.*—Judgment affirmed.