Lazarus, d/b/a Sea Coast Supply Company, Appellant,
v. American Motors Corporation, Respondent.

*September 6—October 1, 1963.*

" . . .

For the appellant there were briefs by *Henry C. Friend* of Milwaukee, and *Frankenstein, Lewis & Feierberg* of Chicago, Illinois, and oral argument by *Mr. Friend* and *Mr. A. S. Frankenstein.*

For the respondent there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *Laurence E. Gooding, Jr.,* and *Ross Shumaker* of counsel, all of Milwaukee, and oral argument by *Mr. Shumaker.*

GORDON, J. In order for the plaintiff to prevail, it was incumbent upon him to establish the existence of a contract with the defendant. The plaintiff contends that an enforceable contract was created under either of the following theories: (a) A contract arose when the plaintiff accepted the defendant's purchase order and agreed to deliver steel within the terms of the contract; or (b) a contract arose when, under the inducement of the defendant's offer, the plaintiff took substantial steps to perform.

The issue before this court is to be determined by the law of Illinois. The order called for the delivery of steel in Illinois. If there was a contract, it was accepted in Illinois. See *Estate of Knippel* (1959), 7 Wis. (2d) 335, 342, 96 N. W. (2d) 514; *State ex rel. Webster Mfg. Co. v. Reid* (1922), 177 Wis. 612, 616, 188 N. W. 67.

The trial court concluded that the purchase order was a unilateral offer which was revoked before there had been acceptance and without having induced substantial action on the part of the plaintiff. We agree with such conclusions.

### *Was There a Bilateral Contract?*

The purchase order contained the following provision:

"You further agree that either the delivery of any item covered by this order or the written approval of this order shall constitute an acceptance thereof."

Thus, without making delivery, Mr. Lazarus could have created an enforceable bilateral contract by submitting a written approval of the purchase order. The trial judge's determination that written approval was not given by Mr. Lazarus is fully supported by the record.

The companies involved in this litigation are all engaged in the business of buying or selling large quantities of steel. In view of the steel shortage which then existed, it is completely understandable that Mr. Lazarus chose not to utilize that portion of the purchase order which would have permitted him to create an enforceable contract. The trial judge was warranted upon this record in concluding that Mr. Lazarus did not bind himself to deliver the steel or to be liable for the consequences.

Judge DECKER noted that the issuance of the purchase order gave the offeree "a license to hunt steel for which payment would be made on delivery." When the trial judge added that it "does not require clairvoyance to understand

why" Mr. Lazarus did not avail himself of the opportunity to create a bilateral contract, he undoubtedly had reference to the market condition which existed at the time of the steel shortage. This is the practical construction of a "rational business instrument" which we referred to in *Bitker & Gerner Co. v. Green Investment Co.* (1956), 273 Wis. 116, 120, 76 N. W. (2d) 549.

### Was There Substantial Performance?

The true thrust of the plaintiff's appeal is embodied in his contention that it would be unjust to deny him recovery, since the defendant's offer reasonably induced substantial action on the part of the plaintiff and caused him to change his position to his financial detriment. A unilateral contract will be legally enforceable when it has induced substantial performance or when it has brought about a change of position on the part of the offeree. Restatement, 1 Contracts, p. 110, sec. 90.

Further, if an offer for a unilateral contract is made, the offeror may be bound if the offeree gives or tenders part of the consideration. Restatement, 1 Contracts, p. 53, sec. 45. The reason for the rule is stated by Corbin in his treatise on contracts:

"The reason for the rule . . . is, not that part performance or tender is the 'equivalent' of full performance, but that honorable men do not repudiate their promises after part performance has been given or tendered." 1 Corbin, Contracts, p. 264, sec. 63.

However, from the record it is clear that there was no actual tender of the steel by Mr. Lazarus.

The trial court concluded that Mr. Lazarus did not incur any detriment or undertake any substantial action prior to the revocation of the offer. Judge DECKER found incredulous the plaintiff's contention that the payment of $8,600

was meant to be a commission on the expected profit from this transaction. The plaintiff contends that the trial court erred in disbelieving this testimony, since it was uncontroverted in the record.

While it is true that the record unequivocally establishes that Mr. Lazarus paid $8,600 to Mr. Harris, it does not follow that the court was obliged to adopt the import of that testimony. Mr. Lazarus and Jackson Steel had a long history of business dealings. Mr. Lazarus even had some difficulty in procuring timely payments from Jackson Steel. The mere fact that the money was paid to an officer of Jackson Steel did not prevent the trier of fact from disbelieving that the payment was an outgrowth of the transaction now before the court. It was within the discretion of the trial judge to find that the testimony of Mr. Lazarus as to the purpose of this payment was incredible in view of the intertwined business dealings between Mr. Lazarus and Mr. Harris.

A court is not obliged to adopt even uncontradicted testimony if such testimony is inherently improbable. In *Thiel v. Damrau* (1954), 268 Wis. 76, 85, 66 N. W. (2d) 747, this court said:

"Positive uncontradicted testimony as to the existence of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case which discredits the same or renders it against the reasonable probabilities."

It is also contended by the plaintiff that his commitment to purchase the steel from Union Steel Corporation constituted a substantial action so as to make his contract with the defendant enforceable. At the oral argument, plaintiff's counsel expressed the opinion that the agreement of Mr. Lazarus to buy steel from Union Steel Corporation was legally enforceable by the latter corporation.

This contention is not affirmatively supported by the record. Mr. Lazarus testified that he would have been "stuck" with the steel if he had not canceled, but there is no proof that he was able to cancel only because of Union Steel's desire to maintain his good will. The fact is that Union Steel accepted the cancellation without challenge. It is noted that Union Steel, in acknowledging the purchase order from Mr. Lazarus, wrote the following: "You will release by 12 noon January 28, 1960, or cancel at no charge." The meaning of this clause was not explored at the trial, but it would seem to suggest that Mr. Lazarus had withdrawal rights.

Mr. Lazarus also contends that the defendant prevented him from completing his contract by announcing in advance a refusal to accept delivery on Saturday. In view of the fact that the contract had not been accepted or substantially acted upon by the plaintiff at the time of such "prevention," we find that this did not constitute a legal wrong of which the plaintiff may complain. Similarly, the revocation of the offer was made at a time when there had been neither formal acceptance by the plaintiff nor a substantial change of position. Since Mr. Lazarus did not see fit to make a formal acceptance of the offer, he was in effect "gambling" that American Motors would not revoke its offer by canceling the purchase order before he made delivery.

We recognize that upon different facts it would be possible for a seller of steel to have altered his position so as to effectuate the equitable considerations inherent in sec. 90 of the Restatement. Under all the circumstances of this case, however, this court is satisfied that the offer was withdrawn in time so as to avoid any obligation under the offer to the plaintiff. The preparations which Mr. Lazarus made in order to enable him to perform did not give rise to a legal obligation even under the liberal application of the rule of substantial performance.

In view of the fact that we find that there was no enforceable contract, it is unnecessary to consider the issue of damages.

*By the Court.*—Judgment affirmed.