ENTZMINGER, d/b/a ENTZMINGER MOTORS, Respondent, v. FORD MOTOR COMPANY, Appellant.

*No. 308. Argued June 4, 1970.—Decided July 1, 1970.*
(Also reported in 177 N. W. 2d 899.)

752

For the appellant there were briefs by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Francis J. Wilcox*.

For the respondent there were briefs by *William A. Adler* and *Adler, La Fave & Johnson,* all of Eau Claire, and oral argument by *William A. Adler*.

HALLOWS, C. J. The contentions of Ford deal with the sufficiency of the evidence to sustain the verdict. The dealership contract entered into in 1960 required the plaintiff to file what is known as basic orders each month. These are orders for cars to be held in stock and to be sold off the floor to customers who do not order specially. The contract also required the plaintiff to keep in stock one current-model passenger car, a car demonstrator and a truck demonstrator. The jury found the plaintiff failed to file monthly basic orders during the years from 1961 to 1965, inclusive, and failed to keep a car demonstrator and a truck demonstrator in stock. Ford claims the evidence was sufficient and the jury should have found plaintiff failed to keep a current-model passenger car in stock. In reviewing the evidence we think there is merit in Ford's argument that the plaintiff breached the contract in not maintaining a current-model car in stock, but this breach is in the

same class as the other breaches which the jury held were not material.

Ford contends these breaches were material because they were deliberate, amounted to a repudiation of the contract, and the contract provided such breaches were material. It was testified without dispute that the reason for the necessity of monthly basic orders was to allow Ford to schedule its production and that model cars were to be kept in stock to meet the needs of impulsive buyers and demonstrators were to be used to promote sales. As we see it, Ford wanted a stock-on-hand operation and the plaintiff was running a catalog-order dealership from the beginning.

We think the evidence sustains the verdict that these breaches were not material. In determining the materiality of the breaches, the jury was not required to accept the uncontested testimony of the witness for Ford. *State ex rel. Stollberg v. Crittenden* (1966), 29 Wis. 2d 413, 416, 139 N. W. 2d 94; *Lazarus v. American Motors Corp.* (1963), 21 Wis. 2d 76, 84, 123 N. W. 2d 548; *Thiel v. Damrau* (1954), 268 Wis. 76, 66 N. W. 2d 747; *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48. The jury could consider that in a small town such as Colfax in a rural area there were not many impulsive buyers and one model would not be much of a choice for even that demand. The volume of the plaintiff's sales did not justify scheduling basic orders when no prospective sales were in sight. The failure to schedule basic orders in this small operation which sold only 148 new cars in a period of five years would have little effect on estimating and scheduling production of a company as large as Ford. But more importantly, the breach in respect to basic orders was not very material when the business of the plaintiff was on a decline and little could be expected by way of increased sales by this factory method of pressure-sales promotion. The jury could believe that Ford did not consider these breaches

very important or material as Ford allowed them to exist and the plaintiff to struggle along for some years before refusing to perform its part of the contract. If the breaches were material, such delay waived the materiality. 17 Am. Jur. 2d, *Contracts,* p. 833, sec. 388. The delay went to the materiality of the breach and *Wm. G. Tannhaeuser Co. v. Holiday House* (1957), 1 Wis. 2d 370, 83 N. W. 2d 880, relied on by Ford, does not decide this point but only that the common-law right of nonperformance exists after a material breach by the other party although the contract provides other remedies.

Ford argues the contract expressly provides ". . . that failure of the Dealer to fulfill or perform any of the same [duties and obligations] would constitute a material breach of this agreement." Such a clause may be binding as a basis for the exercise of the remedies provided in the contract; but the clause does not have vitality or exclusiveness in determining materiality of the breach for the purpose of the exercise of the common-law right of nonperformance for a material breach. The question for such a purpose is one of fact to be determined as in this case by the jury.

The importance of the materiality of the plaintiff's breaches lies in the doctrine that a material breach by one party to a contract excuses subsequent performance by the other party. *Myrold v. Northern Wisconsin Cooperative Tobacco Pool* (1931), 206 Wis. 244, 239 N. W. 422; *People's Trust & Savings Bank v. Wassersteen* (1937), 226 Wis. 249, 276 N. W. 330; *Wm. G. Tannhaeuser Co. v. Holiday House, supra; see also* 17 Am. Jur. 2d, *Contracts,* p. 880, sec. 425. Thus if the plaintiff's breaches were material, Ford would have been justified in its refusal to fill the orders for the cars in December of 1964, and in January and February of 1965.

Since Ford was unjustified in not delivering the three cars which eventually caused the plaintiff to dis-

continue his garage business, we reach the question of the sufficiency of the evidence to sustain the award of $15,000 damages for the breach. As the trial court said in its opinion, "The evidence as to damages sustained by the plaintiff is not very satisfactory, which is often the case where a breach of contract is involved." Because of this the law is liberal in its requirement in respect to the quality and quantity of proof. Nevertheless, there must be sufficient evidence to sustain the verdict. Perhaps automobile-dealership contracts present a more difficult problem than other types of contracts in the measure of damages for breach. *See* Macaulay, *Changing A Continuing Relationship Between A Large Corporation and Those Who Deal With It: Automobile Manufacturers, Their Dealers, and The Legal System,* 1965 Wis. L. Rev. 483 and 740; *The Elusive Measure of Damages For Wrongful Termination of Automobile Dealership Franchises,* 74 Yale Law Journal (1964), 354.

The trial court restricted the evidence to a period from the time of Ford's breach to sometime after the formal termination of the contract, or approximately thirteen and one-half months. The only specific item of damage is the loss of profit on the three cars of approximately $1,200. The evidence shows an average earning of approximately $4,500 a year, but Ford claims this is not really a profit if the cost of management is deducted such as a salary for the plaintiff. On the other hand the plaintiff argues with the introduction of the Mustang and model LTD a marked improvement in the sales of Ford cars resulted, but Ford counters that the sales of these models were partly offset by the discontinuance of other models. There is no definite evidence nor can there be of the number of sales the plaintiff would have made had he been able to get cars from Ford. It is undisputed the business was dying and the plaintiff was desirous of selling it.

We think the evidence is insufficient to sustain $15,000 and liberally construing the quantity and quality of proof that $10,000 would be a fair and reasonable amount. Consequently, Ford is entitled to a new trial on the issue of damages but the plaintiff should be given an opportunity for judgment by filing a remittitur of $5,000. *See Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

On the plaintiff's cross appeal he asks this court to reinstate the award of punitive damages of $25,000 because the evidence shows a violation of sec. 218.01 (3) (a) 16 and 17, Stats., and the actions of Ford were tortious, malicious, and in reckless disregard of the rights of the plaintiff. The trial court thought there was no violation of sec. 218.01 (3) (a) 16 and 17. These sections deal with unfair acts against auto dealers and with the unfair cancellation of automobile franchises and dealership contracts. The court also concluded there was no malice or wilful disregard of rights of the plaintiff although Ford did "a messy job of terminating the contract." Actually, Ford did not terminate the contract until after the plaintiff went out of business but by refusing to deliver cars on order hastened what appeared to be the inevitable death of the business. This is not a case of the destroying or the wilfully harming of a successful business. We think the trial court was correct in not finding any malice. It is true there was a disregard for the plaintiff's right but this is true in every breach of contract. Ford's breach did not have those characteristics which constitute it a tort. Punitive damages are not allowed for a mere breach of contract, *White v. Benkowski* (1967), 37 Wis. 2d 285, 291, 155 N. W. 2d 74; *Gordon v. Brewster* (1858), 7 Wis. 309 (*355), or for all torts or for crimes but generally for those personal torts, which are malicious, outrageous or a wanton disregard of personal rights which require the

added sanction of a punitive damage to deter others from committing acts against human dignity. *See: Jones v. Fisher* (1969), 42 Wis. 2d 209, 166 N. W. 2d 175; *Malco v. Midwest Aluminum Sales* (1961), 14 Wis. 2d 57, 109 N. W. 2d 516; Ghiardi, *Exemplary or Punitive Damages in Wisconsin,* Vol. 1, No. 1, Wisconsin Continuing Legal Education Series (1961). The type of cases allowing punitive damages has been cases of assault and battery,[1] slander and libel,[2] seduction,[3] malicious prosecution,[4] breach of promise,[5] and the like.[6] Despite repeated criticism of the punitive-damage rule, this court has adhered to it but has refused to extend the doctrine.[7] However, in a most recent case, the court did lay down, as an additional requirement, that where no actual malice is shown the character of the offense must have the outrageousness associated with serious crime. *Jones v. Fisher, supra.*

---

[1] *Asplund v. Palmer* (1950), 258 Wis. 34, 44 N. W. 2d 624; *Manol v. Moskin Bros., Inc.* (1930), 203 Wis. 47, 233 N. W. 579; *Nichols v. Brabazon* (1896), 94 Wis. 549, 69 N. W. 342.

[2] *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 155 N. W. 2d 619; *Lehner v. Berlin Publishing Co.* (1933), 211 Wis. 119, 246 N. W. 579; *Reed v. Keith* (1898), 99 Wis. 672, 75 N. W. 392; *Templeton v. Graves* (1883), 59 Wis. 95, 17 N. W. 672.

[3] *Lavery v. Crooke* (1881), 52 Wis. 612, 9 N. W. 599; *Klopfer v. Bromme* (1870), 26 Wis. 372.

[4] *Fuchs v. Kupper* (1963), 22 Wis. 2d 107, 125 N. W. 2d 360; *Gladfelter v. Doemel* (1958), 2 Wis. 2d 635, 87 N. W. 2d 490; *Topolewski v. Plankinton Packing Co.* (1910), 143 Wis. 52, 126 N. W. 554.

[5] *Luther v. Shaw* (1914), 157 Wis. 234, 147 N. W. 18.

[6] *Gatzow v. Buening* (1900), 106 Wis. 1, 81 N. W. 1003; *Robinson v. Superior Rapid Transit Ry. Co.* (1896), 94 Wis. 345, 68 N. W. 961.

[7] *Karns v. Allen* (1908), 135 Wis. 48, 58, 115 N. W. 357 (where the court refused exemplary damages in equity); *Weymouth v. Chicago & Northwestern Railway Co.* (1863), 17 Wis. 567 (*550) (where the court refused exemplary damages for conversion of logs).

We think the trial court was correct in denying punitive damages. The plaintiff shall be allowed costs on this appeal, which shall be offset, however, by the costs to Ford of its reply brief to the cross appeal.

*By the Court.*—Order affirmed; judgment reversed, and a new trial granted unless within thirty days the plaintiff shall file in the trial court a remittitur of $5,000.

CONNOR T. HANSEN, J. (*dissenting*). I respectfully dissent. The majority would impose its judgment as to the amount of damages on that of the jury and the experienced and able trial judge who presided over the trial and carefully, thoroughly and deliberately considered the matter in motions after verdict before entering judgment. Admittedly this court has the duty and responsibility to review the assessment of damages. However, in my opinion, in this case, such an intrusion on the province of the jury and the trial court is unwarranted. I would affirm the judgment of the trial court. I am authorized to state that Mr. Justice ROBERT W. HANSEN joins with me in this dissent.