**UNIFIED CATHOLIC SCHOOLS OF BEAVER DAM EDUCATIONAL ASSOCIATION, Plaintiff,**

v.

**UNIVERSAL CARD SERVICES CORP., Defendant.**

No. 98–C–1156.

United States District Court, E.D. Wisconsin.

Jan. 27, 1999.

Wm. H. Gergen, Beaver Dam, WI, for plaintiff.

Leonard G. Leverson, Molly J. Zillig, Laurie E. Peterson, Milwaukee, WI, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Unified Catholic Schools of Beaver Dam Educational Association ("UCPS") is an unincorporated educational association organized under Wisconsin law and the auspices of St. Patrick's, St. Michael's and St. Peter's Parishes of Beaver Dam and the Archdiocese of Milwaukee. All of its members are Wisconsin citizens. The defendant, Universal Card Services Corporation ("Universal"), is a Delaware corporation with its principal place of business in Jacksonville, Florida.

On October 26, 1998, plaintiff sued defendant in Dodge County Circuit Court alleging that defendant converted funds of the plaintiff's to the defendant's use. Plaintiff's former employee, Janet L. Gittus, who had check-writing authority over a UCPS account, improperly used the account to write checks to defendant in payment of her personal credit card bills in the amount of $38,944.44. Upon discovering Ms. Gittus's misappropriation, plaintiff asked defendant to return the money, but defendant refused. Plaintiff then sued, seeking compensatory and punitive damages and attorneys fees and alleging that defendant acted intentionally and without regard for plaintiff's rights.

On November 25, 1998, pursuant to 28 U.S.C. §§ 1441(a) and 1446, defendant removed the action to this court under 28 U.S.C. § 1332, based on diversity of citizenship. On December 3, 1998, defendant answered, admitting many of the factual allegations but interposing a number of affirmative defenses, including that it was a holder in due course under the Uniform Commercial Code and thus received the checks free of plaintiff's claims. Defendant further stated that it used the proceeds to pay vendors who had provided goods and services to Gittus.

On December 24, 1998, pursuant to 28 U.S.C. § 1447(c), plaintiff filed a motion to remand the case to Dodge County Circuit Court, claiming that this court lacks subject matter jurisdiction because the amount in controversy is not more than $75,000. Plaintiff also filed the affidavit of James R. Hafenstein, president of UCPS, "to clarify our initial pleading ... to the effect that the punitive damages we seek shall not ... result in a total claim ... greater than $74,000." Hafenstein also offered to stipulate to the same effect. The issue before me is whether I have subject matter jurisdiction.

## II. ANALYSIS

### A. Applicable Federal Law

 Generally, the party seeking a federal forum has the burden of establishing federal jurisdiction. *Wellness Community Nat'l v. Wellness House,* 70 F.3d 46, 49 (7th Cir.1995). Where the amount in controversy is contested, the proponent of federal jurisdiction must "support its assertion with 'competent proof.'" *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218 (7th Cir.1995) (quoting *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). A diversity defendant in a removal action must show to a reasonable probability that more than the jurisdictional amount is in controversy. *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366–67 n. 2 (7th Cir.1993).

In determining whether the jurisdictional amount is met, I generally look at plaintiff's state court complaint along with the record as a whole. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993). Where both actual and punitive damages are claimed as the basis for establishing the jurisdictional amount, both elements must be considered to the extent claimed. *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211 (7th Cir.1995); *Bell v. Preferred Life Assurance Soc'y of Montgomery*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943),

Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, I must undertake a two-part inquiry. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is in the affirmative, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that plaintiff would under no circumstances be entitled to recover the jurisdictional amount. *Anthony v. Security Pac. Fin. Serv., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir.1991).[1] However, when a claim for punitive damages makes up the bulk of the amount in controversy and may even have been asserted solely to confer jurisdiction, I must scrutinize the claim closely. *Anthony*, at 315; *see also Kahal v. J.W. Wilson & Assoc., Inc.*, 673 F.2d 547, 548 (D.C.Cir.1982) (holding that where the availability of punitive damages is the *sine qua non* of federal jurisdiction, courts must examine the punitive damage claim carefully to ensure that it has a colorable basis in law and fact).[2]

In determining whether the jurisdictional amount is met, I am limited to considering the facts existing at the time of removal. *Gould*, 1 F.3d at 547. In *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992), the Seventh Circuit held that where plaintiff's state court complaint alleged a breach of a $70,00 contract and defendant removed, plaintiff's post-removal affidavit and stipulation limiting its claim to less than the jurisdictional amount (then $50,000) was ineffective as a basis for remand because jurisdiction is determined as of the instant of removal. This rule was reiterated in *Shaw*, 994 F.2d at 367, and *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427–29 (7th Cir.1997). The rationale underlying the Seventh Circuit's refusal to consider a plaintiff's post-removal submission modifying previous demands for damages was that plaintiffs should not be per-

---

1. The "legal certainty" test had its genesis in the case of *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In that case plaintiff's state court complaint asked for compensatory damages in excess of the jurisdictional amount. The plaintiff's assessment of its own damages was regarded as a reliable basis for determining that the jurisdictional amount was met because plaintiff obviously did not make its damage demand in order to obtain federal jurisdiction. Therefore, the court held that the jurisdictional amount was presumed to have been met in the absence of proof to the contrary to a legal certainty.

The application of the "legal certainty" test in cases where it is unclear what amount of compensatory damages the plaintiff claims and where the defendant, not the plaintiff, seeks federal jurisdiction has been criticized and rejected by some courts as being inconsistent with the rule that the burden of proving federal jurisdiction is on the proponent of such jurisdiction. *See e.g., Garza v. Bettcher Indus., Inc.*, 752 F.Supp. 753, 758–59 (E.D.Mich.1990); *National Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100, 102–03 (D.D.C.1985). Similar criticism could arguably be applied to use of the "legal certainty" test in cases like the present one, where plaintiff demanded an unspecified amount of punitive damages, and the defendant removed the case to federal court. *See also Hohn v. Volkswagen of Am.*, 837 F.Supp. 943, 945 (C.D.Ill.1993) (Where plaintiff's state court complaint sought punitive damages in an unspecified amount, the defendant removed the case, and the court remanded, stating that the claim for punitive damages was unquantified and ambiguous and that federal jurisdiction could not be based on guesswork.).

2. This principle is consistent with the general duty of federal courts to scrutinize all cases which come before them to ensure that jurisdictional requirements are met. *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659, 661 (7th Cir.1982). A court is not obliged to accept either party's perspective and proceed to adjudicate on the merits every case in which the lawyers can keep straight faces when making their presentations. *Pratt Cent. Park Ltd. v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir.1995). Policing the border of federal jurisdiction is a necessity in any system having both limited (national) and general (state) courts. *Id.*

mitted to "manipulate the process" to defeat federal jurisdiction once a case has been properly removed. *Gould*, at 547.

■ In a removal case, however, a plaintiff is not prohibited from raising the issue of whether the amount actually in controversy at the time of removal met the jurisdictional requirement. *Harmon v. OKI Sys.*, 902 F.Supp. 176, 178 (S.D.Ind.1995); *Reason v. General Motors Corp.*, 896 F.Supp. 829 (S.D.Ind.1995). Moreover, nothing in *Shell Oil, Shaw* or *Chase* prevents the consideration of evidence generated subsequent to removal if it is probative of the amount in controversy at the time of removal. *Harmon* at 178.

## B. Wisconsin Law Regarding Punitive Damages

In 1995 the legislature created a new statute, Wis.Stat. § 895.85, which revised the law of punitive damages in Wisconsin. Section 895.85 limits the availability of punitive damages to cases where there is evidence "that the defendant acted maliciously toward the plaintiff or in intentional disregard of the rights of plaintiff." The Wisconsin Civil Jury Instructions Committee indicates that the intent of the new legislation was to make it more difficult for a plaintiff to recover punitive damages. *See* Wis. JI–Civil 1707.1 n. 1. The Committee states that the "intentional disregard standard" was clearly intended to be more narrow than the case law standard which allowed punitive damages for conduct which showed a reckless indifference to or disregard of the rights of others on the part of the wrongdoer. *Id.* n. 2.

■ Section 895.85, however, is consistent with previous Wisconsin law insofar as it makes clear that the availability of punitive damages depends on the character of the particular conduct committed rather than on the theory of liability propounded by the plaintiff. *See Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 269, 294 N.W.2d 437 (1980) (citing *Entzminger v. Ford Motor Co.*, 47 Wis.2d 751, 757–58, 177 N.W.2d 899 (1970)). The statute is also consistent with prior case law in permitting punitive damages for "malicious" acts. Wisconsin jury instructions define "malicious" acts as those resulting from

hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended. *Id.*

■ There is no case law which defines "intentional disregard of the plaintiff's rights." However, the Wisconsin Supreme Court has stated that the ill-intent necessary to recover punitive damages requires that "something must be shown over and above the mere breach of duty for which compensatory damages can be given. That is, a showing of bad intent deserving punishment, or something in the nature of special ill will towards the person injured ..." *Wangen*, 97 Wis.2d at 268, 294 N.W.2d 437 (quoting *Meshane v. Second St. Co.*, 197 Wis. 382, 387, 222 N.W. 320 (1928)).

■ Moreover, under Wisconsin law, a jury award of punitive damages is subject to the control of the trial court. A trial court has the power to reduce the amount of punitive damages to what it determines is a fair and reasonable amount for such kind of conduct. *Fahrenberg v. Tengel*, 96 Wis.2d 211, 232 n. 12, 291 N.W.2d 516 (1980). In determining the proper amount of the award, courts consider such factors as the grievousness of the acts, the degree of malicious intent, whether the award bears a reasonable relationship to the award of compensatory damages, the potential damage that might have been caused by the acts, and the ratio of the award to civil or criminal penalties that could be imposed for comparable misconduct. *Management Computer Serv. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 557 N.W.2d 67 (1996).

## C. Application of Law to Facts

■ In the present case, plaintiff's state court complaint sought $38,944.44 in compensatory damages and an unspecified amount of punitive damages. After defendant removed the case, plaintiff submitted the Hafenstein affidavit stating that its punitive damages demand, together with other damages, was less than $74,000. Based on previously cited Seventh Circuit precedent, I will disregard

the Hafenstein affidavit.[3]

Next, I undertake the two-part inquiry specified in such cases as *Anthony* and *Sharp Electronics Corp*. I ask first whether punitive damages are recoverable as a matter of state law. If so, I have jurisdiction unless it is clear beyond a legal certainty that plaintiff would not be able to recover the jurisdictional amount. In addressing the question of whether, under Wisconsin law, plaintiff could recover punitive damages, I will consider both plaintiff's complaint and defendant's answer. Although defendant filed its answer after the notice of removal, I do not believe that Seventh Circuit precedent precludes my consideration of it. The answer sets forth defendant's legal position as of the time of removal and cannot be characterized as an attempt to change previously stated facts or to manipulate the process. I consider it to the extent that it is probative of the availability of punitive damages as of the date of removal. *Harmon*, 902 F.Supp. at 178.

Defendant argues that in a previous conversion case, *Fahrenberg v. Tengel*, 96 Wis.2d 211, 291 N.W.2d 516 (1980), the plaintiff received punitive damages and that, therefore, plaintiff could receive punitive damages in this case. Defendant's logic, however, is flawed. Under Wisconsin law, plaintiff's right to punitive damages is not based on the plaintiff's theory of liability, but rather on the character of the defendant's conduct. Wis.Stat. § 895.85; *Entzminger*, 47 Wis.2d at 757–58, 177 N.W.2d 899. In *Fahrenberg*, punitive damages were awarded, not because it was a conversion case, but because of the bad conduct of defendant, which included masterminding a burglary of plaintiff's business.

The case at bar is a most unlikely candidate for an award of punitive damages. Plaintiff alleges no facts suggesting that defendant acted "maliciously" or "in an intentional disregard of the rights of the plaintiff."

The only wrongdoing which plaintiff alleges is that, after plaintiff advised defendant that Gittus had used plaintiff's money to pay her credit card bills, defendant refused to return the money. Plaintiff does not allege that defendant knew anything about the misappropriation prior to plaintiff's demand or that, in refusing to accede to the demand, defendant behaved in some offensive fashion. Plaintiff's complaint suggests nothing more than that defendant did not consider itself legally obliged to return the money. Assuming that plaintiff's allegations are true, they would not support an award of punitive damages.

Defendant's answer reinforces my impression that this case does not involve conduct which might justify the imposition of punitive damages. Defendant admits most of plaintiff's factual allegations but reaches a different legal conclusion based on these facts. Defendant contends that under principles of commercial law it was not required to return the money. I do not know if defendant's legal position is correct but it is surely arguable.

There is no basis in the record for me to conclude that defendant was acting maliciously or in intentional disregard of plaintiff's rights. The case seems to me to involve a relatively simple legal question under the Uniform Commercial Code and may be amenable to resolution by summary judgment. The defendant is a corporation, and plaintiff does not allege the parties had any previous interaction or that defendant displayed any special ill will toward plaintiff. It is not a basis for recovering punitive damages that a defendant disagrees with plaintiff's legal theory.

Plaintiff's boilerplate allegation that defendant acted in intentional disregard of plaintiff's rights is not sufficient. I am not obliged to accept plaintiff's perspective on punitive damages (here adopted by defen-

---

3. An argument could be made that the Hafenstein affidavit should be treated differently than the post-removal submissions in such cases as *Shell Oil* and *Shaw* in that plaintiff, here, had never previously asked for an amount of damages in excess of the jurisdictional amount. The *Shaw* court distinguished the decision of the Fifth Circuit in *Asociacion Nacional de Pesca-* *dores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir.1993), by emphasizing that there "plaintiff never asserted his claim was worth more than $50,000 (unlike Shaw)" and that "our holding against Shaw is premised on his having conceded that more than $50,000 is in controversy." *Shaw*, 994 F.2d at 368 n. 3.

dant as a means of obtaining federal jurisdiction). *Pratt Cent. Park Ltd.*, 60 F.3d at 352.

Even if defendant could be said to have acted "intentionally" in some sense of the word, the level of intent does not rise to that necessary to justify an award of punitive damages. The ill intent necessary for such an award must be more than a "mere breach of duty for which compensatory damages can be given," but rather must be "deserving punishment, or something in the nature of special ill will towards the person injured ..." *Wangen,* 97 Wis.2d at 268, 294 N.W.2d 437 (quoting *Meshane,* 197 Wis. at 387, 222 N.W. 320 (1928)).

■ Thus, I find that under Wisconsin law plaintiff could not recover punitive damages in this case. Finally, if by some stretch of the imagination, plaintiff could receive punitive damages, based on the foregoing analysis I find that it is clear beyond a legal certainty that plaintiff could not recover a sufficient sum to meet the amount required for federal jurisdiction.[4]

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that this case is hereby remanded to the Circuit Court for Dodge County.

---

4. Plaintiff here also asks for attorneys fees. Where a litigant has a right based on contract, statute or other legal authority to an award of attorneys fees if he prevails in the litigation, a reasonable estimate of those fees may be included in determining whether the jurisdictional minimum is satisfied. *Ross,* 693 F.2d at 661 (1982). Defendant, however, has not argued that a possible award of attorneys fees should be considered in determining the existence of federal jurisdiction.