VOLVO TRUCKS NORTH AMERICA,
Petitioner-Appellant-Petitioner,

v.

STATE of Wisconsin DEPARTMENT OF TRANSPORTATION
and Wisconsin Division of Hearings and Appeals,
Respondents,

WAUSAU TRUCK CENTER, INC.,
Interested Party-Respondent.

Supreme Court

*No. 2008AP1385. Oral argument January 7, 2010.
—Decided March 11, 2010.*

2010 WI 15

(Also reported in 779 N.W.2d 423.)

For the petitioner-appellant-petitioner there were briefs by *Anthony Tomaselli, Andrew M. Norman,* and *Quarles & Brady LLP,* Madison, and *Billy M. Donley* and *Baker & Hostetler, LLP,* Houston, Tex., and oral argument by *Billy M. Donley.*

For the interested party-respondent there was a brief by *Paul R. Norman, Andrew N. DeClercq,* and *Boardman, Suhr, Curry & Field LLP,* Madison, and oral argument by *Paul R. Norman.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished order of the court of appeals summarily affirming the order of the Circuit Court for Marathon County, Greg Grau, Judge, affirming an order of the Division of Hearings and Appeals.[1]

---

[1] *Volvo Trucks N. Am. v. DOT,* No. 2008AP001385, unpublished slip op. (Wis. Ct. App. Jan. 6, 2009).

¶ 2. The dispute arises under chapter 218, §§ 218.0101–.0172 of the statutes, governing motor vehicle dealers. Volvo Trucks North America issued a termination notice to Wausau Truck Center, canceling Wausau Truck's Volvo franchise. Wausau Truck filed a complaint of unfair cancellation pursuant to Wis. Stat. § 218.0114(7)(d) (2007–08).[2] The Division of Hearings and Appeals, which is charged by the legislature with hearing such disputes under Wis. Stat. §§ 218.0114(7)(d) and 227.43(1)(bg), issued an order requiring Volvo to rescind its termination notice. Volvo sought judicial review of the Division's order under chapter 227 of the statutes. *See* Wis. Stat. §§ 227.46(2m), 227.52.

¶ 3. Volvo argues that the Division's order to rescind Volvo's termination notice is based on the erroneous conclusion that although Wausau Truck materially breached its dealer agreement with Volvo, the breach was subsequently cured within a reasonable time, as required under Wis. Stat. § 218.0116(1)(i)1.b. The Division determined that the relevant cure period ended on December 31, 2003, and that Wausau Truck had cured the material breach within that time.

¶ 4. The issue presented for judicial review here, as before the circuit court and the court of appeals, is whether Wausau Truck cured its breach within the "cure period." If Wausau Truck's breach of the dealer agreement was not cured, then Volvo had "just provocation" allowing it to cancel the dealer agreement under Wis. Stat. § 218.0116(1)(i)2.[3]

---

[2] All references to the Wisconsin statutes are to the 2007–08 version unless otherwise indicated.

[3] "Just provocation" is defined by Wis. Stat. § 218.0116(1)(i), quoted at ¶ 29, *infra.*

¶ 5. This issue in turn presents two questions: (1) What is the meaning of the word "cure" in Wis. Stat. § 218.0116(1)(i)1.b.? (2) After being given notice by Volvo, did Wausau Truck cure its breach of the dealer agreement? If Wausau Truck cured the breach, then Volvo's franchise termination was not lawful and the Division's order to rescind the termination notice will be affirmed.

¶ 6. For the reasons set forth, we conclude that Volvo did not show that its proposed interpretation of the statutory word "cured" (or any other proposed interpretation of "cured") was more reasonable than the Division's interpretation. Accordingly, given our posture in review of administrative decisions, the Division's interpretation of the word "cured" is accepted as the correct interpretation of the statute.

¶ 7. We need not resolve whether in the instant case the Division's determination that Wausau Truck had cured its breach of the dealership agreement is a finding of fact or a conclusion of law. That determination does not alter the result that the Division's order is affirmed. If the Division's determination that Wausau Truck cured the breach is a finding of fact, there is substantial evidence to support the finding. If the Division's application of its interpretation of "cured" to the undisputed facts is a conclusion of law, the Division's rationale was reasonable and no more reasonable application of the definition of "cure" to the facts has been established. Accordingly, we affirm the decision of the court of appeals that affirmed the order of the Division requiring Volvo to rescind the termination notice it issued to Wausau Truck.

I

■

¶ 8. We turn first to the applicable standard of review. This court reviews the order of the Division rather than the order of the circuit court or the decision of the court of appeals, although we benefit from the analyses of those courts.[4]

¶ 9. The role of the Division of Hearings and Appeals in the instant case is the same as in *Racine Harley-Davidson, Inc. v. Division of Hearings and Appeals,* 2006 WI 86, ¶ 8 n.4, ¶¶ 21–25, 292 Wis. 2d 549, 717 N.W.2d 184. *See* Wis. Stat. § 227.43(1)(bg). Accordingly, we look to *Racine Harley-Davidson* for the standard of review.

¶ 10. Unless a court finds a ground for setting aside, modifying, remanding, or ordering agency action or ancillary relief, the court shall affirm the agency's action. Wis. Stat. § 227.57(2).

■■

¶ 11. Volvo argues that a question of law is presented, namely the meaning of "cure" in Wis. Stat. § 218.0116(1)(i)1.b. An agency's "interpretation and application of a statute is a question of law to be determined by a court,"[5] as we have discussed numerous times. Erroneous interpretation of law provides a ground to set aside or modify an agency decision. Wis. Stat. § 227.57(5). A reviewing court may, however, give deference to an agency's interpretation and application of a statute.[6]

---

[4] *Racine Harley-Davidson, Inc. v. Div. of Hearings & Appeals,* 2006 WI 86, ¶ 8 n.4, 292 Wis. 2d 549, 717 N.W.2d 184.

[5] *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 14.

[6] *See, e.g., id.,* ¶¶ 11–20.

¶ 12.   Deference to an agency's determination of law recognizes the comparative institutional qualifications and capabilities of the courts and the agency.[7] Granting deference to an agency's statutory interpretation does not abdicate the court's own authority and responsibility to interpret statutes. Even when granting deference to an agency's statutory interpretation, the court does not accept the agency's interpretation without a critical eye. The court itself must always interpret the statute to determine the reasonableness of the agency interpretation; only reasonable agency interpretations are given any deference.[8]

¶ 13.   Our case law has established three levels of deference to be accorded to an agency interpretation and application of the law, depending on the circumstances: "great weight deference," "due weight deference," or "no deference."[9]

¶ 14.   "Great weight" deference is warranted when (1) the agency is charged by the legislature with administering the statute in question; (2) the agency interpretation is of long standing; (3) the agency employed its specialized knowledge or expertise in interpreting the statute; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. When courts apply "great weight" deference, an agency's reasonable statutory interpretation will be sustained even if the court concludes that

---

[7] *Id.*, ¶ 14.

[8] *Id.*, ¶ 15.

[9] *Id.*, ¶¶ 11, 13–14.

another interpretation is equally reasonable or even more reasonable.[10]

¶ 15.    Courts give lesser, "due weight" deference when the agency is charged by the legislature with enforcement of the statute and has experience in the area, but has not developed expertise that necessarily places the agency in a better position than the court to interpret the statute. Courts applying "due weight" deference will sustain an agency's statutory interpretation if it is not contrary to the clear meaning of the statute and no more reasonable interpretation exists.[11] Applying "due weight" deference, a reviewing court will not set aside the agency's interpretation in favor of another equally reasonable interpretation, but will replace it with a more reasonable interpretation if one exists.[12]

¶ 16.    Reviewing courts give no deference to an agency's statutory interpretation when any of the following conditions are met: (1) the issue presents a matter of first impression; (2) the agency has no experience or expertise relevant to the legal issue presented; or (3) the agency's position on the issue has been so inconsistent as to provide no real guidance.[13] A court giving no deference to an agency's interpretation of a statute benefits from the agency's analysis but interprets the statute independent of the agency's interpretation and in effect

---

[10] *Id.*, ¶¶ 16–17.

[11] *Id.*, ¶ 18.

[12] *Id.*, ¶¶ 18, 20.

[13] *Id.*, ¶ 19.

adopts an interpretation the court determines is the most reasonable interpretation.[14]

¶ 17. Here, we give "due weight" deference to the Division's interpretation of the statute, as did the court of appeals and the circuit court. Due weight deference is accorded in the instant case because the Division is charged with hearing and deciding complaints of unfair cancellation of a motor vehicle dealer franchise. Wis. Stat. § 218.0114(7)(d). The Division has experience in applying the franchise termination provision of the Wisconsin Motor Vehicle Dealer Law, even though no cases on the particular issue in the instant case, namely "cure" of a breach, have been presented. Under these circumstances, the Division's interpretation and application of the statute warrants due weight deference.[15] "A reviewing court accords an agency's statutory interpretation due weight deference when the agency has some experience in an area but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute."[16]

¶ 18. Thus the Division's interpretation and application of the statute in the instant case will be upheld if it is "not contrary to the clear meaning of the statute" and no more reasonable interpretation exists.[17]

¶ 19. With regard to the Division's findings of fact, we review those findings by applying a "substantial evidence" standard, affording significant deference to

---

[14] *Id.*, ¶¶ 19, 20.

[15] *Id.*, ¶ 18.

[16] *Id.*

[17] *Id.*

305

the agency's findings.[18] Substantial evidence does not mean a preponderance of evidence. It means whether after considering all the evidence of record, reasonable minds could arrive at the conclusion reached by the trier of fact.[19] "The weight and credibility of the evidence are for the agency, not the reviewing court, to determine."[20] An agency's findings of fact may be set aside only when a reasonable trier of fact could not have reached them from all the evidence before it, including the available inferences from that evidence.[21]

## II

¶ 20. The historical facts are not in dispute. Volvo is a manufacturer and distributor of heavy duty trucks and parts. Wausau Truck is a dealer in heavy duty trucks. Wausau Truck is a dealer for both Volvo and Peterbilt trucks. The relationship between Volvo and Wausau Truck is governed by their dealer agreement. A dealer agreement is defined in the statutes as "a contract that describes the franchise relationship between manufacturers, distributors, importers and dealers." Wis. Stat. § 218.0101(1).

¶ 21. The genesis of the dispute occurred in 2001 when Wausau Truck decided it would sell its Volvo dealership and focus exclusively on Peterbilt trucks. As part of that business decision, Wausau Truck outlined a set of proposed actions it labeled the "Volvo Elimination Plan." The goal of the Plan was to promote sales of Peterbilt trucks at the expense of Volvo trucks. Not all

[18] Wis. Stat. § 227.57(6).

[19] *Hilton ex rel. Pages Homeowners' Ass'n v. DNR,* 2006 WI 84, ¶¶ 16, 25, 293 Wis. 2d 1, 717 N.W.2d 166.

[20] *Id.,* ¶ 25 (quoted source omitted).

[21] *Id.,* ¶¶ 16, 25.

proposed actions were taken, but some of the changes that were implemented included changing the business name to "Peterbilt Wisconsin—Wausau"[22]; not using the Volvo logo on business cards; attempting to convince longtime Volvo customers to switch to Peterbilt; giving Volvo quotes only upon request; requiring that all Volvo quotes be accompanied by a Peterbilt quote; and focusing marketing efforts on Peterbilt. Under the Plan, Volvo truck sales dropped significantly.[23]

¶ 22. The Division found, and the parties agree, that Wausau Truck's conduct under the Plan constituted a material breach of the dealer agreement. Specifically, Wausau Truck does not dispute that during the time period when it intended to sell its Volvo franchise, it had a policy of attempting to convert customer fleets in its sales area, including Volvo fleets, to Peterbilt trucks. This conduct breached provisions of the dealer agreement that obligate Wausau Truck to aggressively promote Volvo trucks.

¶ 23. Following its earlier actions anticipating the sale of the Volvo franchise, by the end of 2002, Wausau Truck asserted that it decided not to sell its Volvo franchise and that it ended the measures taken to shift its Volvo customers to Peterbilt. Nevertheless, Wausau Truck's Volvo sales for 2002 showed a dramatic decrease.

[22] This name follows the convention of other Peterbilt dealerships owned by the same parent company, which do not sell Volvo trucks.

[23] The Division recognized that sales of Volvo trucks also fell nationally beginning in 2000, corresponding to a slump in the trucking industry. The Division determined, however, that Wausau Truck's decision to promote Peterbilt at the expense of Volvo trucks resulted in a substantial decline in its sales during 2001–2003.

¶ 24. That decrease, along with actions taken by Wausau Truck, led Volvo to send a notice of breach to Wausau Truck on May 20, 2003. Volvo was not aware that Wausau Truck had developed a "Volvo Elimination Plan" until this proceeding began, but its 2003 termination letter highlighted, as breaches of the dealer agreement, many of the actions Wausau Truck had undertaken as part of the Plan.

¶ 25. A notice of breach is not sufficient to cancel a dealer agreement. Under Wis. Stat. § 218.0116(1)(i)2., Volvo was prohibited from canceling Wausau Truck's dealer agreement "without just provocation." "Just provocation" existed if "the breach [was] not cured within a reasonable time" after Wausau Truck received written notice of the breach from Volvo. Wis. Stat. § 218.0116(1)(i)1.b.

¶ 26. Volvo initially gave Wausau Truck 60 days to cure its breach, but in subsequent discussions, extended the period for Wausau Truck to cure the breach to the end of 2003. The Division therefore identified December 31, 2003, as the relevant deadline by which Wausau Truck was required to cure its breach of the dealer agreement.

¶ 27. The dispute now before the court centers on whether Wausau Truck's conduct after Volvo's notice of the breach cured the breach by December 31, 2003.

¶ 28. On January 30, 2004, dissatisfied with Wausau Truck's actions, Volvo issued a notice of termination based on its determination that Wausau Truck had not cured its breach. In response, Wausau Truck filed a complaint alleging unfair cancellation. Wis. Stat. § 218.0114(7)(d). The Division found that Wausau Truck's actions under the Volvo Elimination Plan had constituted a material breach of the dealer agreement but that Wausau Truck had cured the breach. In summary, the Division determined that "the most egre-

308

gious elements of the Volvo Elimination Plan were abandoned prior to the issuance of the Notice of Breach and, except for a few minor examples relating to the change in the operating name . . . the remaining components of the Volvo Elimination Plan were abandoned during the cure period." The Division concluded that Wausau Truck had "recommitted itself to promoting Volvo products."

## III

¶ 29. Volvo's primary argument raises a question of law, namely the meaning of the word "cured" within Wis. Stat. § 218.0116(1)(i)1.b. According to the statute, once the Division found that Wausau Truck had materially breached its dealer agreement, it then had to determine whether Wausau Truck cured the breach. If the breach was cured, then Volvo lacked "just provocation" to cancel the dealer agreement. Section 218.0116(1)(i)1.b. defines "just provocation" to be a material breach by the dealer of a reasonable or necessary provision of the agreement and the breach is not cured within a reasonable time after the written notice of the breach from the manufacturer. Section 218.0116(1)(i)1.b. provides as follows:

> "Just provocation" means a material breach by a motor vehicle dealer . . . , due to matters within the dealer's . . . control, of a reasonable and necessary provision of an agreement and the breach is not *cured* within a reasonable time after written notice of the breach has been received from the manufacturer, importer or distributor (emphasis added).

¶ 30. The statute does not define the word "cured." The parties agree that the Division has not explicitly defined the word "cured" in the instant case. No other cases decided by the Division give definition to

309

the statutory word "cured" within Wis. Stat. § 218.0116(1)(i)1.b.

¶ 31.   The word "cured" may have different meanings in different contexts. Volvo contends that the word "cured" in the statute should be accorded its common, ordinary dictionary meaning, citing *In re Clark,* 738 F.2d 869, 872 (7th Cir. 1984), which used a dictionary definition of "cure" in a case involving a default on a residential mortgage loan.

¶ 32.   Volvo argues that "cure" means to restore matters to the *status quo ante,* that is, to restore matters to the way they were before the breach. Volvo asserts that the Division should have required Wausau Truck to undo the effects of its breach and return to the conditions existing before Wausau Truck breached the dealer agreement by its actions under the Plan.

¶ 33.   According to Volvo, Wausau Truck has not restored matters to the way they were before the breach:   Wausau Truck continued to follow the Volvo Elimination Plan; Wausau Truck still used the name Peterbilt in its corporate name; and Wausau Truck failed to re-establish communication with some customers who previously purchased Volvo trucks from Wausau Truck and have established relationships with other Volvo dealerships or with other manufacturers. Consequently, Volvo contends that Wausau Truck has not cured the breach of the dealer agreement.

¶ 34.   In sum, Volvo argues that the Division did not follow the dictionary definition of "cured" when it determined that Wausau Truck had "recommitted" itself to fulfilling its obligations under the dealer agreement. Volvo asserts that the Division therefore took an erroneous approach to the statutory requirement that the breaching party had to cure the breach.

¶ 35. In contrast, Wausau Truck argues that the statutory word "cured" should be defined according to its usage in contract law.

¶ 36. We agree with Wausau Truck. Technical words or phrases in a statute should be given their technical or specialized meaning. *Bruno v. Milwaukee County,* 2003 WI 28, ¶¶ 8, 20, 260 Wis. 2d 633, 660 N.W.2d 656.

¶ 37. The dealership law relates to and governs a particular kind of contract, a dealer agreement. A dealer agreement is defined by statute as a contract between manufacturers, distributors, or importers and dealers. The statutory provision for "cured" relates to a breach of a dealer agreement, to a breach of a contract. Wisconsin Stat. § 218.0116(1)(i)1.b. codifies a motor vehicle dealer's right to "cure" breaches of the dealer agreement. In this regulatory context, it would make little sense to use the "common and ordinary" meaning of "cured," even if there were only one such meaning. It makes more sense to refer to terms and concepts established in contract law when we interpret the meaning of "cured" in Wis. Stat. § 218.0116(1)(i)1.b., which governs breach of a contract.

¶ 38. The concept that a breach of contract is "cured" exists in contract law, but relatively few cases give specific guidance on what constitutes a "cure" of a breach of contract.

¶ 39. We are informed about the meaning of "cured" by a contract case cited by Wausau Truck, *Anacapa Technology, Inc. v. ADC Telecommunications, Inc. ,* 241 F. Supp. 2d 1016 (D. Minn. 2002). In *Anacapa,* arbitrators found a material breach of a licensing agreement. The breaching party was given 30 days to cure the breach or the agreement would be terminated. The parties disputed the definition of "cure," and whether the culpable party had cured the breach.

¶ 40. The *Anacapa* court turned to the Restatement (Second) of Contracts and commentary on contract law to determine the meaning of "cure."

¶ 41. The Restatement (Second) of Contracts § 237 cmt. b (1981) states that "[e]ven if the failure is material, it may still be possible to cure it by subsequent performance without a material failure."

¶ 42. Professor Farnsworth, 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.17 at 521 (3d ed. 2004), explains that a breach can be cured by "correcting the deficiency in performance."

¶ 43. *Corbin on Contracts* explains that allowing for a "cure" of the breach gives a party "another chance to perform substantially" and "a second chance to perform according to the contract." The cure is performance to the level of substantial performance.[24]

¶ 44. Another commentator explains a cure of a breach of contract as follows:

> A cure that completely remedies the breach does not pose a problem; but a less than complete cure raises the issue of whether there is still a material breach or whether the breaching party has now substantially performed, thus making the breach nonmaterial. If the breach is upgraded to nonmaterial, the constructive condition is satisfied by cure just as it would have been if substantial performance had been rendered initially.[25]

---

[24] 8 Catherine M.A. Mc Cauliff, *Corbin on Contracts,* § 36.7 at 349 (1999).

[25] William H. Lawrence, *Cure After Breach of Contract Under the Restatement (Second) of Contracts: An Analytical Comparison with the Uniform Commercial Code,* 70 Minn. L. Rev. 713, 747 (1986).

¶ 45. The *Anacapa* court concluded that "to cure a material breach means to engage in subsequent conduct that substantially performs or performs without a material failure." *Anacapa*, 241 F. Supp. 2d at 1020. Perfect performance is not required to effectuate a cure. "Only if the breach is not cured to the level of substantial performance may the injured party terminate the contract." *Anacapa*, 241 F. Supp. 2d at 1020 (2002).

¶ 46. This meaning of "cured" focuses in the present case on the performance of the breaching party, rather than on matters beyond the control of the breaching party, such as the conduct of third parties or on the effects of an economic recession. The *Anacapa* court rejected the argument, similar to the one Volvo makes in the instant case, that to cure a material breach, the breaching party must not only stop the offending conduct but must also "repair the harm done by the breach." *Anacapa*, 241 F. Supp. 2d at 1020.

¶ 47. In the present case, the Division did not explicitly define "cured," but the meaning of "cured" is implicit in its decision. The Division did not apply Volvo's dictionary definition of the statutory word "cured." The Division's statement that Wausau Truck had "recommitted" itself to the dealer agreement and was using its best efforts to promote Volvo products demonstrates that the Division was interpreting the statutory word "cured" to encompass the meaning of "cured" in contract law: the breaching party had to stop the offending conduct and to substantially perform the contract.[26]

---

[26] Numerous authorities focus on the meaning of "cure" as adopted in Section 2–508 of the Uniform Commercial Code, codified in Wisconsin as Wis. Stat. § 402.508, "Cure by seller of

¶ 48.    We reject Volvo's argument that "cured" requires restoration to the *status quo ante* or repair of all harm done by the breach.[27] This is not a reasonable interpretation of the statute. A reasonable interpretation of the statutory word "cured" means the breaching party is to stop the offending conduct and to substantially perform the contract. No other interpretation of the word "cured" is more reasonable.

improper tender or delivery; replacement." As Professor Farnsworth observes, "[a]lthough the concept of cure was known before the Uniform Commercial Code, the Code must be credited with giving a seller of goods a clear right to cure and with popularizing the word *cure* in this context." E. Allan Farnsworth, 2 *Farnsworth on Contracts* § 8.17 at 522 (2004); see also William H. Lawrence, *Cure After Breach of Contract Under the Restatement (Second) of Contracts: An Analytical Comparison with the Uniform Commercial Code,* 70 Minn. L. Rev. 713, 714 ("The cure concept originated in the traditional common law, but it did not receive widespread attention until it was adopted in Article 2 of the UCC.").

The dealer agreement is not a contract for the sale of goods governed by the Uniform Commercial Code. We are not interpreting or applying Wis. Stat. § 402.508. We draw on sources that address the Uniform Commercial Code only to the extent that they reflect on a more widely recognized meaning of "cured" in contract law. Here, Wis. Stat. § 218.0116(1)(i)1.b. specifically allows the dealer to "cure" a breach of a dealer agreement. *See* William H. Lawrence, *Cure After Breach of Contract Under the Restatement (Second) of Contracts: An Analytical Comparison with the Uniform Commercial Code,* 70 Minn. L. Rev. 713, 717 (stating that at common law, "[i]n the absence of a contractual provision allowing a party to cure, most courts traditionally did not acknowledge such a right").

[27] In certain circumstances, contract law may provide that the non-breaching party recovers damages from the breaching party to repair past harm. Restatement (Second) of Contracts § 237, cmt. b. (1981). This issue is not before the court.

314

## IV

¶ 49. We next review the Division's determination that Wausau Truck cured the defect within the cure period. In holding that Wausau had cured its breach, the Division stated that Wausau Truck "has successfully recommitted itself to its Volvo franchise and is using its best efforts to promote Volvo products."

¶ 50. The parties disagree whether the determination that Wausau Truck's breach has been cured under Wis. Stat. § 218.0116(1)(i)1.b. is a finding of fact or a conclusion of law. Ordinarily, in contract law, whether the breaching party's conduct has cured the breach is a question of fact.[28] But in contract law, if no material facts are in dispute and only one conclusion is

---

[28] *See* E. Allan Farnsworth, *Farnsworth on Contracts* § 8.18 at 526–27 (3d ed. 2004) ("Whether a material breach has remained uncured for long enough to justify termination is a question of fact, much like whether the breach is material in the first place."); 8 Catherine M.A. Mc Cauliff, *Corbin on Contracts,* § 36.5 at 340 (1999) (substantial performance is a question of fact); *see also Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 715 (7th Cir. 1985) ("[I]t would be a question of fact whether a franchisee who repeatedly defaulted on a particular duty and 'corrected' each default only long enough to escape termination had even 'corrected' the default").

Some contend that because the question of whether a breach is material is a question of fact, it is therefore a fact question whether the steps taken to cure the breach are substantial and material. In other words, whether the breach has been cured effectively is the same question as whether a material breach continues to exist, ordinarily a question of fact. Whether a material breach of contract has occurred is a question of fact to be determined by the fact finder. *See Koenings v. Joseph Schlitz Brewing Co.,* 126 Wis. 2d 349, 358, 377 N.W.2d 593 (1985) ("[T]he issue of whether Schlitz was in

to be drawn from the facts, whether the breaching party's conduct has cured the breach may be viewed as a question of law.[29]

¶ 51.  The Division treated the question of cure as a question of law and concluded as a matter of law that Wausau Truck "cured the material breaches of the Dealer Agreement within a reasonable time period after Volvo Trucks of North America notified it of the breaches."

¶ 52.  We need not decide whether the Division's determination that Wausau Truck had cured its breach

---

breach of the contract is a factual determination for the jury."); *Entzminger v. Ford Motor Co.,* 47 Wis. 2d 751, 755, 177 N.W.2d 899 (1970) ("[F]or the purpose of the exercise of the common-law right of nonperformance for a material breach[,] [t]he question . . . is one of fact to be determined as in this case by the jury."); *Kieckhefer Box Co. v. John Strange Paper Co.,* 180 Wis. 367, 395, 193 N.W. 487 (1923) ("Whether or not the breach of a contract to deliver goods by installment is . . . so material as to justify the buyer in refusing to proceed further, is a question of fact."); *State v. Jorgensen,* 137 Wis. 2d 163, 169, 404 N.W.2d 66 (Ct. App. 1987) ("Whether a breach of contract exists involves a question of fact.").

[29] "The determination whether a material breach has occurred is generally a question of fact. The materiality of a breach of contract is not always a question of fact, even if the issue is disputed; thus, if there is only one reasonable conclusion, a court must address what is ordinarily a factual question as a question of law." 23 Richard A. Lord, *Williston on Contracts* § 63:3 at 440–41 (4th ed. 2007).

*See also Anacapa Tech., Inc. v. ADC Telecomms., Inc.,* 241 F. Supp. 2d 1016, 1021 (D. Minn. 2002) (observing that the question of cure of a material breach "is usually one of fact," but "the court may determine whether a party has cured its material breach . . . where there are no material facts in dispute and only the legal conclusions to be drawn from the facts remain in doubt").

is a finding of fact or a conclusion of law. If the Division's determination that Wausau Truck cured the breach is a finding of fact, there is substantial evidence to support the finding. If the Division's application of its interpretation of "cured" to the facts is viewed as a conclusion of law, the Division's interpretation and application of the statute were reasonable and no more reasonable interpretation or application of the statute has been brought forth.

¶ 53. Here are the historical facts relevant to the Division's determination that Wausau Truck had cured its breach of the dealer agreement.

¶ 54. The Division found that by the end of 2002, Eric Jorgenson, president and CEO of Wausau Truck's parent corporation, JX Enterprises, had decided not to sell the Volvo franchise at Wausau Truck.

¶ 55. The Division identified several actions taken by Wausau Truck as demonstrating its recommitment to Volvo. Specifically, Wausau Truck: (1) sent a postcard in January 2003 to 296 Volvo customers intended to counter rumors that Wausau Truck would no longer be a Volvo dealer; (2) participated in a Volvo demo program; (3) participated in a special Volvo sales program; (4) conducted a "ride and drive" demonstration of new Volvo models at a Highway 29 truck stop; (5) used the name "Wausau Truck Center" instead of "Peterbilt Wisconsin-Wausau" when dealing with Volvo customers; (6) ended its policy of requiring sales representatives to provide Peterbilt quotes with every Volvo quote; (7) attempted to hire a dedicated Volvo sales representative; (8) re-established regular contact with important Volvo customers; (9) targeted several accounts specifically for Volvo; and (10) generally increased its Volvo quote activity.

¶ 56. Volvo's argument that Wausau Truck's conduct did not cure the breach boils down to its contention that Wausau Truck did not actually end the Volvo Elimination Plan and that any steps it had taken to "cure" the breach either furthered the Plan or were undertaken merely to bolster Wausau Truck's litigation position. Volvo's arguments are almost entirely directed to the Plan.

¶ 57. For example, Volvo takes umbrage with Wausau Truck's continued use of the corporate name Peterbilt Wisconsin-Wausau. Volvo attempts to portray the postcard sent to customers by Wausau Truck as a continuation of the Plan, arguing that as such, it cannot possibly be viewed as part of the cure. Volvo makes much of the fact that the postcard refers to Wausau Truck as "Peterbilt Wisconsin—Wausau." That name appears in small print on the back side of the postcard, as part of the return address; it appears directly below the name "Wausau Truck Center." More significantly, the name "Wausau Truck Center" is featured prominently on the front side of the postcard, which also features images of five Volvo heavy trucks and the Volvo logo, along with the message "We're still here." Eric Jorgenson testified that the "We're still here" slogan was intended to dispel rumors that Wausau Truck would no longer be a Volvo dealer. It was not unreasonable for the Division to consider this postcard mailing as evidence that Wausau Truck cured the breach.[30]

---

[30] Volvo argues that the Division relied on Wausau Truck's conduct after the cure period as part of the cure effort. The particular conduct was Wausau Truck hiring a dedicated Volvo salesperson after the end of the cure period. The Division did not base its determination on Wausau Truck's hiring a dedicated Volvo salesperson. Rather, the Division pointed out that

¶ 58. Similarly, Volvo's other factual arguments are unavailing. It is not enough for Volvo to point to evidence in the record that supports its argument; it would not even be enough for Volvo to show that the greater weight of the evidence was against the Division's findings. Volvo would have to show that no reasonable person, evaluating and drawing reasonable inferences from all of the evidence in the record, could view the evidence in this case and reach the conclusion reached by the Division. Here, the record amply supports the Division's finding that Wausau Truck cured the breach, and Volvo's focus on other facts in the record has not met the burden of showing that the Division's finding was not supported by the record before it.

¶ 59. Rather, Volvo's arguments are invitations for the court to reweigh the evidence and to reach a different factual finding than the Division. The court's function on review of a fact issue is not to determine whether the court would make the same findings as the Division. Nor do we reweigh the evidence. Rather, we need only determine whether the Division erred in making its factual finding. The Division did not err. In holding that Wausau Truck cured its breach, after listing the steps Wausau Truck took regarding the sales of Volvo trucks, the Division noted, "Wausau Truck has successfully recommitted itself to its Volvo franchise and is using its best efforts to promote Volvo products."

¶ 60. Alternatively, if the Division's conclusion that Wausau Truck's conduct "cured" the breach is viewed as a conclusion of law, we conclude that the Division's application of the definition of "cured" to the

*attempting* to hire a dedicated Volvo sales representative was one of the factors that indicated Wausau Truck had cured its breach within the cure period.

facts is a reasonable interpretation and application of the statute; no more reasonable interpretation or application of the statute has been proposed to replace the Division's.

¶ 61.   For the reasons set forth, we conclude that Volvo did not show that its proposed interpretation of the statutory word "cured" (or any other proposed interpretation of "cured") was more reasonable than the Division's interpretation. Accordingly, given our posture in review of administrative decisions, the Division's interpretation of the word "cured" is accepted as the correct interpretation of the statute.

¶ 62.   We need not resolve whether in the instant case, the Division's conclusion that Wausau Truck had cured its breach of the dealership agreement is a finding of fact or a conclusion of law. That determination does not alter the result that the Division's order is affirmed. If the Division's determination that Wausau Truck cured the breach is a finding of fact, there is substantial evidence to support the finding. If the Division's application of its interpretation of "cured" to the undisputed facts is a conclusion of law, the Division's rationale was reasonable and no more reasonable application of the definition of "cure" to the facts has been established. Accordingly, we affirm the decision of the court of appeals that affirmed the order of the Division requiring Volvo to rescind the termination notice it issued to Wausau Truck.

¶ 63.   *By the Court.*—The decision of the court of appeals is affirmed.