COURT OF APPEALS
DECISION
DATED AND FILED

October 11, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No. **2021AP281**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV3**

**IN COURT OF APPEALS
DISTRICT III**

THOMAS A. KING AND KIRSTEN R. KING D/B/A KINGS LOGGING AND
TREE SERVICE,

PLAINTIFFS-RESPONDENTS,

V.

RANDALL L. NIEDERKORN, REED NIEDERKORN, ROGER W.
NIEDERKORN, ROBERT T. NIEDERKORN AND RICHARD H. NIEDERKORN,

DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Trempealeau County: RIAN RADTKE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. As owners of several hundred acres of land, Randall, Reed, Roger, Robert and Richard Niederkorn entered into a logging contract with Thomas and Kirsten King to cut and sell timber from portions of the Niederkorns'

property.[1]  Several months after the Kings began performing their contractual obligations, the Niederkorns terminated the contract.  The Kings later commenced this action, alleging, among other things, that the Niederkorns' termination of the contract was a breach of the contract and caused the Kings to suffer lost profits.

¶2      At the end of a bench trial, the circuit court concluded that the contract required a material breach before the Niederkorns could terminate it. Because the court found that none of the Kings' seven breaches of the contract were material, it determined that the Niederkorns had improperly terminated the contract.  After offsetting the Niederkorns' damages, the court entered a judgment awarding monetary damages to the Kings.  On appeal, the Niederkorns challenge both the court's conclusion regarding the legal standard for terminating the contract and its findings regarding whether the Kings' breaches of contract were material.

¶3      Consistent with Wisconsin common law, we conclude that the contract required a material breach before the Niederkorns could terminate it. Although Wisconsin law permits parties to specify the circumstances in which a contract can be terminated, the parties' contract here did not expressly permit termination upon something less than a material breach.  In addition, we conclude the circuit court did not apply an improper legal standard in determining whether the Kings' breaches of contract were material, nor were the court's related findings of fact clearly erroneous.  Accordingly, we affirm.

---

[1] We note that the parties' respective businesses entered into the contract.  Specifically, the Niederkorns entered into the contract pursuant to their partnership, "Niederkorn Farms." Likewise, the Kings entered into the contract pursuant to their sole proprietorship, "Kings Logging."

**BACKGROUND**

¶4    In November 2015, the parties executed a "TIMBER SALE CONTRACT," which provided that the Kings would harvest timber from the Niederkorns' property and pay the Niederkorns a fixed amount for the timber. The contract language was primarily taken from a contract template drafted by the Wisconsin Woodland Owner's Association, but William Reynolds, a consultant forester who worked with the Niederkorns, made some edits to the contract on their behalf.

¶5    The contract required, among other things, that all work be completed by April 15, 2018; that the Kings pay the timber prices set forth in a products table in the contract; that no operations occur on the property during the November and December months of each year "so as not to disturb deer hunting opportunities"; that the Kings comply with the relevant "Best Management Practices"; and that the Kings "reserve and stay out of the pine [trees]." The contract estimated that the Kings would pay a total amount of $141,325 to the Niederkorns for the timber. In addition, paragraph four of the contract provided that "[t]he [Niederkorns] may terminate this Contract by oral or written notice to the [Kings] upon its breach."

¶6    When the Niederkorns entered into the contract, they were enrolled in a state program that imposed certain timber removal requirements on their property in exchange for a reduction in their property taxes. Specifically, the program required the Niederkorns to perform an "overstory removal" on 224 acres of their property, which essentially required that "almost all of the timber" be cut, with some exceptions.

¶7 The Kings commenced work under the contract in July 2016. In December 2016, the Niederkorns sent the Kings a letter terminating the agreement and stating that "[t]here have been numerous breaches of the contract by [the Kings] including conducting logging operations during the closed period … (November 1-December 31), conducting logging operations in the closed pine area …, and selling wood outside of the products [sales] table." The Niederkorns also requested a "face to face audit" with the Kings "to resolve the large discrepancy between the product sales table and the payments to the seller."

¶8 The Kings later commenced this action alleging a breach of contract claim against the Niederkorns. The Niederkorns, in turn, counterclaimed with their own breach of contract claim, alleging numerous breaches by the Kings. The case proceeded to a bench trial, which was bifurcated into a breach phase and a damages phase.

¶9 At the conclusion of the breach phase, the circuit court found that the Kings had breached the logging contract in seven ways: (1) by failing to provide the Niederkorns with "mill slips" documenting information about the logs sent to a mill; (2) by improperly paying "pulpwood prices" for one load of "sawtimber"; (3) by hauling logs from the property between November 1 and November 4, 2016; (4) by making multiple late payments to the Niederkorns; (5) by causing and not fixing rutting[2] on the property; (6) by using slash[3] as a "top road" on the

---

[2] The contract does not define the term "rutting." Generally speaking, rutting means "an elongated depression caused by wheels or tracks of machinery, equipment or other vehicles and is 6 inches deep or more." *See, e.g.*, WIS. ADMIN. CODE § NR 345.03(12m) (Mar. 2014).

[3] The term "slash" is defined under the contract as "any tree tops, limbs, bark, abandoned forest products, windfalls or other debris left on the land after timber or other forest products have been cut." *See* WIS. STAT. § 26.12(6)(a) (2019-20).

4

property without prior authorization from the Niederkorns; and (7) by damaging thirty-seven pine trees.

¶10    The circuit court recognized, however, that Wisconsin law requires a material or substantial breach before a contract may be terminated, and it concluded that the language in paragraph four of the contract "does not contract out of Wisconsin law." Applying this material-breach requirement, the court found that none of the Kings' breaches—either individually or collectively—were material or substantial, such that the Niederkorns would be justified in terminating the contract.

¶11    At the end of the damages phase, the circuit court found that the Kings suffered $81,804.59 in total damages, which was largely due to the Kings' lost profits after the Niederkorns improperly terminated the contract. The court also found that the Niederkorns suffered $13,627.23 in total damages as a result of the Kings' contract breaches. After offsetting the Niederkorns' damages and awarding the Kings costs and disbursements, the court entered a judgment of $71,621.78 in favor of the Kings.

¶12    The Niederkorns now appeal. Additional facts will be provided as necessary below.

## DISCUSSION

### I.  The degree of breach required to terminate the contract

¶13    It is well established under Wisconsin common law that a party to a contract is obligated to perform in accordance with the contract terms unless the other party commits a material breach of the contract. *Ranes v. American Fam. Mut. Ins. Co.*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998). A breach is material

if it is so serious and substantial as to destroy the essential objects of the agreement. *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). However, if a party's breach is "relatively minor" and not "of the essence," the other party is still bound by the contract and cannot abandon performance. *See id.* (citation omitted). The parties do not dispute these general principles.[4]

¶14    Still, the Niederkorns argue, and the Kings do not dispute, that contracting parties are free to determine a contract's terms, including the specific circumstances under which the contract may be terminated, even if those standards are different from Wisconsin's material-breach requirement.[5] Indeed, parties are generally free to contract as they see fit, provided that the contract does not impose obligations that are contrary to public policy, as expressed by statute, administrative regulation, or by judicial expression of the policy of the common law. *Northern States Power Co. v. National Gas Co.*, 232 Wis. 2d 541, 545-46,

---

[4] Prior precedent has consistently used the term "material breach" to describe a breach that excuses a party's future performance under a contract. *See Ranes v. American Fam. Mut. Ins. Co.*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998) ("[A] party to a contract is obligated to perform in accordance with the contract terms unless the other party's breach is material."); *Management Comput. Servs., Inc., v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996) ("[A] material breach by one party may excuse subsequent performance by the other."). One could fairly argue, however, that the relevant standard requires a breach to be both "substantial" and "material." *See Ranes*, 219 Wis. 2d at 57 ("For a breach to be material, it must be [1] so serious as to destroy [2] the essential object of the agreement."). To the extent both concepts are required, our use of the term "material breach" is not intended to exclude or dismiss the requirement that a breach also be substantial.

[5] The Niederkorns seem to conflate termination with rescission. "Rescission and the right to terminate a contract are distinct remedies. Termination of a contract does not seek to undo the contract, but to terminate obligations going forward, while rescission is the unmaking of a contract." *Ashker v. Aurora Med. Grp., Inc.*, 2013 WI App 143, ¶18, 352 Wis. 2d 193, 841 N.W.2d 297 (Neubauer, J., concurring). The contract specifically provides for the right to terminate the contract under certain circumstances, but it does not address rescission. Accordingly, we construe the Niederkorns' arguments to be seeking termination, not rescission.

606 N.W.2d 613 (Ct. App. 1999). Accordingly, we agree with the Niederkorns' general proposition that contracting parties can conceivably agree to circumstances in which a contract can be terminated even if those circumstances would not ordinarily establish a material breach.[6]

¶15 Consistent with this general proposition, the Niederkorns argue that language in the contract's termination provision allows them to terminate the contract for any breach, not only material breaches. As noted earlier, the termination provision in paragraph four of the contract provides that "[t]he [Niederkorns] may terminate this Contract by oral or written notice to the [Kings] upon its breach." The Niederkorns contend that this language is unambiguous and expressly shows that the parties sought to avoid Wisconsin's material-breach requirement. They further argue that they were justified in terminating the contract because the Kings had breached the contract in several respects, which the circuit court expressly found.

¶16 The Niederkorns' argument presents a question of contract interpretation, which is a question of law that we review de novo. *See Marx v. Morris*, 2019 WI 34, ¶20, 386 Wis. 2d 122, 925 N.W.2d 112. Our interpretation of a contract is governed by the contract's language, which "is construed according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶¶34, 37, 363 Wis. 2d 699, 866

---

[6] Because we agree that contracting parties can determine the circumstances in which the contract can be terminated, we do not address the Niederkorns' legal authority from other jurisdictions addressing that issue.

N.W.2d 679 (citations omitted). The goal in interpreting a contract is to give effect to the parties' intentions. *Id.*, ¶34.

¶17 Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶26, 348 Wis. 2d 631, 833 N.W.2d 586. "We presume the parties' intent is evidenced by the words they chose, if those words are unambiguous." *Id.* (citation omitted). The court's role in interpreting a contract "is not to make contracts or reform them but to determine what the parties contracted to do." *Ash Park*, 363 Wis. 2d 699, ¶38 (citation omitted).

¶18 The plain language of the termination provision does not define or set a standard for the degree of breach required to terminate the contract. Although the provision does not specifically establish that a "material" breach is required to terminate the contract, it also does not declare that the contract can be terminated upon *any* breach, as the Niederkorns assert. It simply states that the Niederkorns may terminate the contract "upon its breach."[7] The contract is therefore silent regarding the degree of breach required to terminate the contract.

¶19 The contract's failure to define the degree of breach required to terminate the contract, however, does not render the contract language ambiguous. Paragraph forty-two of the contract expressly states that the contract "shall be governed by the laws of the State of Wisconsin." As noted earlier, Wisconsin law

_____

[7] We note that the parties used significantly different language elsewhere in the contract, where "any" breach was the relevant standard. Under the "Performance Bond" provision in paragraph six, the performance bond must be applied to the actual damages incurred by the Niederkorns "[u]pon *breach of any condition* of this Contract." (Emphasis added.) This difference in language further supports our conclusion that the contract does not expressly permit termination upon any breach.

requires that a party to a contract perform in accordance with the contract terms unless the other party commits a *material* breach of the contract. *See **Ranes***, 219 Wis. 2d at 57. The Niederkorns correctly observe that paragraph forty-two of the contract is "a common choice of law provision" and that it does not bar contracting parties from choosing their own contractual terms. They fail to recognize, however, that the termination provision does not expressly alter the degree of breach required to excuse their performance under the contract. Indeed, the contract contains no language expressing an intent to avoid, or contract out of, Wisconsin's material-breach requirement for terminating a contract.

¶20 The contract therefore provided, pursuant to Wisconsin law, that the Niederkorns could terminate the contract only upon a material breach of the contract.[8] Accordingly, the Kings' breaches of contract, which the circuit court found not to be material, were insufficient to justify the Niederkorns' termination of the contract.

## II. The circuit court's findings that the Kings' breaches were not material

¶21 In the alternative, the Niederkorns argue that their termination of the contract was justified because the Kings' breaches of contract were material. The Niederkorns contend that we should apply a de novo standard of review to the circuit court's determinations that the breaches were not material because neither

---

[8] Even if the termination provision could be considered ambiguous, we generally construe ambiguities in a contract against the party who drafted the contract. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶44, 326 Wis. 2d 300, 786 N.W.2d 15 ("The principle that ambiguities are construed against the drafter is a 'deeply rooted doctrine' of contract interpretation." (citation omitted)). Accordingly, any ambiguities would be interpreted against the Niederkorns because the Niederkorns, through their forester William Reynolds, selected the contract and edited it.

party is challenging the court's underlying factual findings with respect to the breaches of contract, and the question is therefore whether the breaches found by the court satisfy the legal standard in Wisconsin for terminating a contract.

¶22 The Niederkorns, however, have not identified any legal authority establishing that de novo review applies to the determination of whether a breach of contract is material. To the contrary, Wisconsin courts have long recognized that whether a party to a contract has committed a material breach is a question of fact. *See **Volvo Trucks N. Am. v. DOT***, 2010 WI 15, ¶50 n.28, 323 Wis. 2d 294, 779 N.W.2d 423 ("Whether a material breach of contract has occurred is a question of fact to be determined by the fact finder."); ***Ralph Gentile, Inc. v. State Div. of Hearings & Appeals***, 2011 WI App 98, ¶5, 334 Wis. 2d 712, 800 N.W.2d 555; ***Management Comput. Servs.***, 206 Wis. 2d at 184; ***Myrold v. Northern Wis. Co-op. Tobacco Pool***, 206 Wis. 244, 249, 239 N.W. 422 (1931) ("Whether or not there is a material breach is, except in clear cases, a question for the jury.").

¶23 We will not disturb a circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2019-20). Even if the evidence would permit contrary findings, factual findings will be affirmed under the clearly erroneous standard as long as the evidence would permit a reasonable person to make the same findings. ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶24 The Niederkorns' material breach argument largely centers on their assertion that the circuit court misunderstood the law regarding whether a breach is material because "[i]t mistakenly believed that its task was to identify one singular contract objective or purpose." They therefore contend that the court applied an improper legal standard when assessing the materiality of the Kings'

breaches because it did not consider all of the essential objects and purposes of the contract.

¶25 In determining whether a breach of contract is material, a contract can indeed have more than one essential object or purpose. *See Appleton State Bank v. Lee*, 33 Wis. 2d 690, 692-93, 148 N.W.2d 1 (1967) ("Before a party not in default may be entitled to the relief of rescission[,] there must be so serious a breach of the contract by the other party as to destroy the essential objects of the contract."); *Management Comput. Servs.*, 206 Wis. 2d at 183; *see also* WIS JI—CIVIL 3076 (2001). Beyond citing the circuit court's determination as to the essential purpose of the contract, however, the Niederkorns fail to identify any part of the record showing that the court incorrectly believed a contract can have only one essential purpose or object. In reality, the record tends to support the opposite conclusion.

¶26 When reciting the applicable law, the circuit court stated: "[F]or a material breach, the nonperformance must be so substantial and the breach so serious so as to destroy the essential purpose of the agreement." This statement neither suggests the court believed a contract can have only one essential purpose, nor is it inconsistent with prior precedent. *See Ranes*, 219 Wis. 2d at 57 ("For a breach to be material, it must be so serious as to destroy the essential object of the agreement."). Furthermore, after discussing the law, the court determined that "the essential purpose of this agreement is to have the Kings remove the overstory *and* pay the Niederkorns for the products sold pursuant to the contract." (Emphasis added.) Although the court used the singular word "purpose," the court identified two essential purposes of the contract: (1) "to have the Kings remove the overstory"—i.e., to cut and remove most of the timber; and (2) to "pay the Niederkorns for the products sold pursuant to the contract." The record therefore

suggests that the court correctly understood that a contract could conceivably have more than one essential purpose or object. For these reasons, we cannot conclude that the court applied an improper standard or misunderstood the law regarding a material breach of contract.

¶27 In arguing that the circuit court applied an improper legal standard, the Niederkorns also contend that one essential purpose of the contract was for the Kings to harvest the timber without unreasonably damaging the Niederkorns' property or interfering with Niederkorns' use of their property. The court, however, never found that the contract had such an essential purpose. Rather, the court found, as just noted, that the essential purposes of the contract were to perform an overstory cut and to pay the Niederkorns pursuant to the contract. That finding is not clearly erroneous, especially in light of the contract's title of "TIMBER SALE CONTRACT" and the contract's opening provision stating that "[t]he [Niederkorns] hereby authorize[] the [Kings] to enter upon the following described lands … only *for purposes of cutting and removing timber* marked or otherwise designated by the [Niederkorns]." (Emphasis added.)

¶28 To the extent the Niederkorns challenge the circuit court's findings that none of the Kings' breaches were material, we conclude that those findings are not clearly erroneous.[9] As noted earlier, a breach is material if it is so serious as to destroy the essential objects of the contract. *See **Management Comput. Servs.**,* 206 Wis. 2d at 183. Whether a breach is material involves the

---

[9] We recognize that the Niederkorns "are not claiming the trial court got it wrong on the facts as to a material breach of contract, they are claiming that the trial court got it wrong on the law." We nevertheless consider whether the circuit court's findings are clearly erroneous to be thorough and complete.

consideration of several factors, "including the extent to which the injured party will be deprived of the benefit that he or she reasonably expected, and the extent to which the injured party can be adequately compensated for his or her loss."[10] *Id.* at 184 (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 241, 242 (AM. LAW INST. 1981)). Other relevant considerations might include "the likelihood that the party failing to perform or to offer to perform will cure his failure" and "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *See* RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. LAW INST. 1981). "[E]ven where such a material breach has occurred, the non-breaching party may waive the claim of materiality through its actions." *See **Management Comput. Servs.***, 206 Wis. 2d at 184.

¶29 The circuit court found several breaches related to the Kings' payments to the Niederkorns. Specifically, it found that the Kings breached the contract by once improperly "paying pulpwood prices" for sawtimber, by failing to provide mill slips, and by making a number of late payments. The court further found, however, that none of these breaches were material. It recognized that the incorrect payment of "pulpwood prices" was one incorrect payment out of many

---

[10] The Niederkorns argue that "a material breach is one which deprives the non-breaching party of a benefit which that party reasonably expected." Although the implications of this argument are not entirely clear, the Niederkorns appear to suggest that a material breach occurs anytime a non-breaching party is deprived of a reasonably expected benefit of a contract. To the extent that is the Niederkorns' argument, we disagree. The deprivation of a reasonably expected benefit of a contract is only one factor in determining whether a breach is material. *See **Management Comput. Servs.***, 206 Wis. 2d at 184 (recognizing that one factor in determining whether a breach is material is "the extent to which the injured party will be deprived of the benefit that he or she reasonably expected"). Therefore, even if the Niederkorns were deprived of a reasonably expected benefit due to the Kings' breaches of the contract, those breaches are not automatically deemed material breaches.

payments. In addition, the court observed that the Niederkorns never requested the mill slips or objected to the late payments prior to terminating the contract and that all of the payments were eventually received.

¶30 These findings are not clearly erroneous because a reasonable fact finder could determine that these breaches did not destroy the contract's essential purposes of providing an overstory cut and paying the Niederkorns pursuant to the contract. The Niederkorns could be "adequately compensated" for the single, incorrect payment, *see id.*, which was insufficient by only $588, and they were compensated for that amount as part of the damages awarded to them. In addition, they arguably waived their claim that the late payments and the lack of mill slips were material because they failed to notify the Kings of those issues as they occurred and before terminating the contract based, in part, on those breaches. *See id.* ("[T]he non-breaching party may waive the claim of materiality through its actions.").

¶31 The circuit court also found several minor breaches of the contract related to the Kings' operations on the property. In particular, the court found that the Kings breached the contract by removing timber from the property during the first four days of November 2016, by causing rutting on the property, by damaging some pine trees, and by failing to communicate with the Niederkorns regarding the use of slash as a "top road." Again, however, the court found none of these breaches to be material.

¶32 The circuit court found that the Kings' operations during the month of November did not materially breach the contract because they were isolated to one area of the property and were limited to four days; the ground was too wet to remove the timber at an earlier time; and removing the already-cut timber in

November helped "mitigate loss for both parties." The court also observed that the rutting and use of slash were not material breaches because the summer and fall of 2016 were "unusually wet"; the experts agreed that some rutting was inevitable; the Niederkorns never objected to the rutting or the use of slash prior to, or at the time of, the contract's termination; the contract was terminated midcourse, which prevented the Kings from cleaning up the property at the end of the contract; and the remaining rutting and slash on the property could be addressed through damages. Lastly, the court found that the damage to the pine trees was not a material breach because the damage occurred in good faith and the contract provided a specific remedy for trees that were improperly damaged.

¶33 Again, none of these findings are clearly erroneous. As the circuit court recognized, the Niederkorns had adequate remedies available for the rutting, slash, and damaged pine trees. In fact, the Niederkorns were eventually compensated for these breaches in their damages award. In addition, the Niederkorns never objected to the rutting and slash before terminating the contract midcourse, which ultimately constrained the Kings' ability to fix those conditions during the contract period. Furthermore, by removing timber from the property in early November 2016, the Kings mitigated losses for the Niederkorns because the already-cut timber would have decreased in value had it remained on the property until the end of December. Under these circumstances, a reasonable person could find, as the court did, that these breaches were relatively minor and were not so serious as to "destroy" the contract's essential purposes of providing an overstory cut and paying the Niederkorns for the timber cut.

¶34 The circuit court also considered the Kings' breaches collectively and found that they did not amount to a material breach because "there's ways to address those through the contract or through damages, and I don't find that those

breaches collectively rise to the level of destroying the essential purpose of the contract." This finding was not clearly erroneous because, as the court observed throughout its decision, the Niederkorns failed to notify the Kings about a number of breaches before terminating the contract, and the Niederkorns could be, and were, adequately compensated for many of the breaches. Although the Niederkorns suggest that they had no choice but to terminate the contract because their profits were being "figuratively swept away by damages," they fail to recognize that they could be, and ultimately were, compensated for those damages in the final judgment.

¶35 Finally, even if we could independently review the circuit court's findings that the breaches were not material, and even if we assumed that the contract had an essential purpose of completing the harvest without damage to, or interference with, the Niederkorns' property, we would conclude that the breaches were not "so serious" as to "destroy" that essential purpose of the contract. *See Management Comput. Servs.*, 206 Wis. 2d at 183 (citation omitted). All of the property damage caused by the Kings seems to have occurred in good faith and in pursuit of performing under the contract. The Kings were also never allowed to complete their work under the contract, which prevented them from addressing the Niederkorns' property damage concerns during the contract period. Nonetheless, the Niederkorns had adequate contractual remedies for the property damage and were ultimately compensated accordingly. In addition, the Kings' operations in November were limited to a few days, and their actions benefited the Niederkorns by preventing the already-cut timber from diminishing in value. In short, we agree with the court's findings that none of the Kings' breaches—individually or collectively—were material.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.